JOSEPH WARNER, Appellant, v. MARIE L. FRY, Respondent, No. 41458— 228 S. W. (2d) 729.

Division One, April 10, 1950.

*Louis E. Miller, Miller & Landau* and *B. Sherman Landau* for. appellant.

*Moser, Marsalek, Carpenter, Cleary & Carter, Lee M. Carter* and *Jesse E. Bishop* for respondent.

HYDE, J.—Action for damages for personal injuries from plaster falling upon plaintiff's head and back. Plaintiff had a verdict for ▮ $20,000. However, the trial court sustained defendant's motion for judgment in accordance with her motion for directed verdict. From the judgment thereafter entered for defendant, plaintiff has appealed. The question involved is the tort liability of an owner for injuries caused by a defective condition in the interior of a building which is in the exclusive control of a tenant.

Defendant purchased the building June 19, 1944. At that time, Mrs. Katherine Steele was a month to month tenant of the entire building. She used the first floor as a tavern, known as the "Congress Grill", where liquor was sold by the drink. She also occupied the two residential flats above. No meals were served and there was no prepared place for dancing. There were "No Dancing" posters up but there was evidence that some of the patrons did dance, occasionally, when Mrs. Steele was out of the room. There was a coin operated juke box and a small portable radio in the tavern. Later, a coin operated pinball machine was added. (Mrs. Steele said this was after plaintiff was injured.) The place was described as a "neighborhood tavern." Most of the people who came there were regular customers who were long-time acquaintances of Mrs. Steele. These patrons would frequently sit there reading newspapers, listening to baseball broadcasts and occasionally singing with the music.

Mrs. Steele paid the rent, both before and after defendant purchased the building, to Mr. Carl Mueller of the Hauschulte Real Estate Company on the tenth of each month. On July 10, 1944, Mrs. Steele showed Mr. Mueller a place in the ceiling (from which the plaster later fell) and he said he was going to make a report of it. On August 10th, she told him the ceiling was getting worse and "it ought to be looked after." She said: "The next day or two after that Mr. Fry (defendant's husband) came on in and looked at it." On August 18th, plaster fell on plaintiff while he was seated at a table drinking beer in the tavern. The plaster that fell was about 6 or 8 feet in diameter, about two and a half inches thick, and was enough to fill three tubs. Its weight was estimated at 30 to 40 pounds. The ceiling was 19 feet high. There was no evidence as to the condition of the ceiling on the date defendant bought the building.

A lease is regarded as equivalent to a sale of the premises for the term, so the general rule is that a lessor is under no obligation to repair leased premises (unless he has contracted to do so, which was not true in this case) and that he is not liable for injuries to the tenant or his invitees caused by defects therein, regardless of whether they existed at the time of the demise or thereafter came into existence.

(1 Tiffany, Landlord and Tenant 556, Sec. 86, p. 649, Sec. 96; A. L. I. Restatement of Torts, Sec's. 355-356; Prosser on Torts, Sec. 81; Roach v. Herz-Oakes Candy Co., 357 Mo. 1236, 212 S. W. (2d) 758; Lahtinen v. Continental Bldg. Co., 339 Mo. 438, 97 S. W. (2d) 102; Kohnle v. Paxton, 268 Mo. 463, 188 S. W. 155; Bender v. Weber, 250 Mo. 551, 157 S. W. 570; Home Owners' Loan Corp. v. Huffman (CCA 8th) 124 Fed. (2d) 684.) The principal exceptions to this rule, into which plaintiff's authorities fall, are concealment of known dangerous conditions (Restatement of Torts, Sec. 358; Tiffany, Sec's. 86 and 96; Prosser Sec. 81) likewise not shown to be true in this case; conditions dangerous to persons outside the premises, such as on a public walk or highway (Restatement, Sec. 379; Prosser, Sec. 81; Walsh v. Southwestern Bell Tel. Co., 331 Mo. 118, 52 S. W. (2d) 839; Kelly v. Lacede Real Estate & Investment Co., 348 Mo. 407, 155 S. W. (2d) 90) which is not applicable to the facts of this case; and leasing premises, in a dangerous condition, for a purpose which involves the admission of the public. This latter exception of "public use" is the one upon which plaintiff really relies and the only one which might be applicable to the facts of this case. (As to its extent see Restatement, Sec. 359; Prosser, Sec. 81; 123 A. L. R. 870 Annotation; 130 A. L. R. 1275 Annotation; 52 C. J. S. 77, Sec. 422(b) (2); 22 Am. Jur. 534, Sec's. 667-668; Tiffany, 655, Sec. 96(c).) For the reasons hereinafter stated we do not think it is applicable to this case.

 In Missouri, as shown by the cases above cited, we have made no distinction between premises leased for residential or commercial purposes; the same general rule has been applied to both. (See also Clark v. Chase Hotel Co., 230 Mo. App. 739, 74 S. W. (2d) 498 and cases cited.) As the cited A. L. R. Annotations show, some courts have imposed liability on the theory of nuisance but have called defects nuisances under circumstances which could only reasonably be classified as negligence. (See discussion in Webel v. Yale University, 125 Conn. 515, 7 Atl. (2d) 215, 123 A. L. R. 863.) Some courts have also extended the meaning of the term "public use" so that it would logically include every commercial use for which premises are open to the patronage of the public. We think both views are unsound.

We applied the principle of Restatement Section 359 in Brown v. Reorganization Investment Co., 350 Mo. 407, 166 S. W. (2d) 476. There the arrangement was for a one night wrestling show in a large auditorium and the equipment which caused the injury was set in place by the owner's employees. We held that the owner was liable for any unsafe condition created by the use of this equipment. The authorities we cited therein show that this principle of liability has been generally applied to premises leased for public exhibitions and entertainments, especially when they are intended to be used for a

very limited period. However, these authorities limit this liability to conditions existing at the time of demise.

The basis of such liability undoubtedly must be that under such circumstances the nature of the use intended by both parties creates a duty upon the owner to have the premises in a reasonably safe condition before leasing for such a purpose. We think this is the true basis of the "public use" rule and that an owner's duty in respect thereto is similar to his duty to persons outside the premises in other cases. (See Junkermann v. Tilyon Realty Co., 213 N.Y. 404, 108 N. E. 190, L. R. A. 1915F, 700.) We also believe, and so hold, that a leasing for a "public use," which imposes such a duty, is one made for a purpose which contemplates the assembly of a large number of persons at the same time on the premises, either upon one or several occasions or continuously throughout the period of a lease. (This does not limit the application of the rule to places of amusement as plaintiff suggests it would; the earliest decisions involved wharves and piers. Prosser, Sec. 81.) Therefore, we hold that the "public use" rule does not apply to ordinary commercial establishments, open to the patronage of such persons as may be attracted thereto as customers, the primary purpose of which is not to assemble large groups at the same time. (See La Freda v. Woodward (N.J.), 15 Atl. (2d) 798, 130 A. L. R. 1269.) There is a substantial difference between the two in the risk involved which we think should make a difference as to the duty of the owner, to persons coming on the leased premises, to have them in a reasonably safe condition at the time of the demise. Persons assembled in large groups have little opportunity to discover and avoid dangerous conditions and are less likely to be on the alert to avoid them. It is also less likely that they will be or can be warned of them by the lessee as they assemble. Clearly such conditions as we hold are required for application of the "public use" rule did not exist in this case. We, therefore, hold that plaintiff did not make a jury case and the Court properly directed entry of judgment for defendant.

The judgment is affirmed. All concur.