Larry Ernest BROOKS, an Infant, by His Next Friend, Harry E. Brooks, Appellant,

v.

Joseph S. RUBIN and Israel D. Rubin, Respondents.

No. 45247.

Supreme Court of Missouri.

Division No. 1.

July 9, 1956.

Rehearing Denied Sept. 10, 1956.

Thomas M. Sullivan, Hugh B. Downey, Downey, Abrams & Sullivan, Kansas City, for appellant.

Henry W. Buck, William A. Rundle, Jr., Roger T. Hurwitz, Kansas City, for respondent S. Rubin. Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, of counsel.

Roger T. Hurwitz, Kansas City, for respondent Israel D. Rubin.

COIL, Commissioner.

Larry Brooks, 15 years old at the time, was grievously injured by a fall when, on October 4, 1951, a 2″ x 4″ railing on which he was sitting, at the landing of an outside back stairway at 4634–38 Troost in Kansas City gave way. At the close of all the evidence in his action for $200,000 damages, through his father as next friend, the trial court directed a verdict for defendants. Plaintiff below has appealed from the ensuing judgment.

As we view it, plaintiff's petition was on the theory that a landlord-tenant relationship existed between defendants and Larry's parents, that defendants had retained control of the back stairs and porches leading to the Brooks' and other tenants' apartments, and that defendants negligently failed to use ordinary care to maintain such stairs in a reasonably safe condition for the use intended. Plaintiff averred, inter alia, that defendants were the lessees in a certain 10-year lease dated April 1, 1946, whereby they had leased the premises involved from the owners. Defendants admitted the execution of that lease as alleged but denied all other allegations of plaintiff's petition, including the averments that there was a landlord-tenant relationship between them and plaintiff's parents, and that they had retained control of the stairs in question. Defendants' answers alleged that the second and third floors of the mentioned building and the stairways from the ground leading thereto were subleased to one Herman Strecker for a term commencing June 1, 1951, and ending March 31, 1956, and that all dominion and control with respect to the premises so subleased were thereby released to the said Strecker and that the defect in the stairway railing, if any, was at a place under the control of defendants' sublessee. Defendants' evidence, to which reference in some detail will later be made, supported that allegation in that defendants adduced in evidence the sublease containing the pleaded provisions. Plaintiff here takes

the position that he was in no wise bound by defendants' evidence including the written sublease and relies solely on his own evidence to support his contention that he made a jury case.

We therefore initially examine plaintiff's evidence and the reasonable inferences therefrom from a standpoint most favorable to him. Plaintiff put in evidence several paragraphs of a petition which had been filed by instant defendants, as plaintiffs there, in an action in the Circuit Court of Jackson County. That petition showed on its face that the matters stated pertained to the underlying lease which instant defendants admitted they had executed in April 1941. Those paragraphs were admitted on the theory that the statements contained therein constituted admissions against the interests of instant defendants.

For present purposes, we shall assume that the statements contained in that pleading were reasonably construable to mean what instant plaintiff contends they meant. So construing those statements, defendants admitted that they had leased the entire building in question from the owners (an estate) in 1932 and continuously had occupied that 3-storied building as tenants from then until July 2, 1951, and that since April 1, 1946, they had occupied said building as tenants under the 10-year lease heretofore referred to dated April 1, 1946; and that defendants had spent large sums of money in remodeling the building, including an expenditure of sums in rehabilitating the second and third floors thereof and in maintaining the building in a tenantable condition. The lease, dated April 1, 1946, was by specific reference made a part of the "admission" petition by the averments of one of the paragraphs which instant plaintiff read in evidence. Among the provisions contained in that lease was one which gave the lessees the right to assign, mortgage, and sublet the leasehold estate and the interest created by the lease.

We shall further assume, without deciding, that plaintiff's evidence that his parents were at accident time, October 4, 1951, second-floor tenants in the building in question and that they used the stairway in question in common with other second and third-floor tenants, in addition to defendants' "admissions" heretofore noted, was sufficient evidence, standing alone, to permit the inferences that on October 4, 1951, there existed a landlord-tenant relationship between defendants and plaintiff, and that defendants had retained control of and were in control of the common stairway on October 4, 1951.

The fallacy in plaintiff's present position, however, arises from the fact that his evidence did not stop with the matters heretofore mentioned. On the contrary, plaintiff proved by the testimony of his father and mother that they were, during their entire occupancy of a portion of the building, the tenants of persons other than defendants, i. e., that they did not enter into any landlord-tenant relationship with defendants.

Their testimony was that, in answer to an advertisement, plaintiff's mother went to a second-floor front apartment of the premises in question where she found Mrs. Hodges waiting to show and rent that apartment; that plaintiff's mother rented the apartment from Mrs. Hodges in June 1949, and that the Brooks family lived in that front apartment for about a year when they moved to a vacant rear apartment with the approval of and by arrangement with Mrs. Hodges; that during the entire period of their occupancy until June 1951, they paid rent to Mr. and Mrs. Hodges; that the rent receipts were signed only by either Mr. or Mrs. Hodges; that in June 1951, Mrs. Hodges introduced them to Mr. Herman Strecker and stated that they would pay rent to him from then on. Thereafter they continuously, during the remainder of their tenancy and through the accident date of October 4, 1951, paid rent to Mr. Strecker; he gave them rent receipts signed only by him; and in December 1951 Mr. Strecker gave them a written notice to vacate the premises. In addition,

both Mr. and Mrs. Brooks testified that they had never known defendant I. D. Rubin and Mr. Brooks said that he knew defendant Joseph S. Rubin only as the man who owned the merchandise store on the first floor of the Troost Avenue premises. They said they saw him around the premises, saw him walk up and down the back stairway during that time, but they had not talked with him and did not know at any time what he was doing there.

There was no evidence, direct, or circumstantially supporting a reasonable inference, that either the Hodges or Strecker were, in fact, or in the contemplation of the Brooks, acting as the agent for anyone or in any capacity other than the landlords of those occupying the second and third-floor apartments. The only reasonable conclusion was that the Brooks entered into and maintained a tenant relationship to Hodges and later Strecker as their landlords; that the Brooks recognized Strecker as their landlord on the accident date; and that there was in fact no landlord-tenant relation between plaintiff and defendants.

In view of the foregoing direct and positive evidence adduced by plaintiff, any inferences, which may have arisen from the fact of the Brooks' occupancy and the "admissions" of defendants, to the effect that the Brooks were the tenants of defendants Rubin and that consequently defendants had retained control of the stairway because it was a stairway used by two or more tenants, and that, therefore, defendants owed plaintiff a duty to use ordinary care to keep the stairway in a reasonably safe condition for the use intended, were destroyed. The basic fact plaintiff had to establish (in the absence of proof of an express agreement by defendants to maintain the stairs in a reasonably safe condition) was that defendants were the landlords of the Brooks. That must be true because if the landlord-tenant relationship did not exist between defendants and Brooks, plaintiff could not prove retention of control by defendants by simply proving that the porch was used by two or more tenants. Consequently, when plaintiff adduced positive evidence that defendants were not the landlords of plaintiff's parents, any possible inference from defendants' "admissions" that they were the landlords of plaintiff's parents was destroyed. Likewise destroyed as a consequence of the destruction of the basic inference was the dependent inference that defendants, simply because they were tenants of the entire building and had spent money on it, had retained control of the stairs in question.

■ Plaintiff may not make a submissible case by relying upon inferences which are contrary to plaintiff's only direct evidence on the basic issue upon which the contrary inferences must rest. See Lappin v. Prebe, 345 Mo. 68, 72, 131 S.W.2d 511, 513 [6].

Thus, it would appear that if defendants retained control of the common stairway, they must have done so, not because of a landlord-tenant relation between them and the Brooks, but by reason of the relationship which existed between defendants and Herman Strecker. And it would follow, tentatively at least, that if defendants were liable in damages for plaintiff's injury, their liability had to arise because of a breached duty which they owed Strecker by virtue of which plaintiff could recover as Strecker's tenant.

Now the only other evidence adduced by plaintiff which bore upon the instant question was the testimony of a third-floor tenant. He testified that on the morning of October 5, 1951, defendant Joseph Rubin and two men appeared at the rear of the premises and that Rubin (referring to the broken rail) told those men "to fix it up the best they could * * * and they put a board up there"; that it could have been Herman Strecker's brother who placed the board. The witness also testified that "right around" the time of the accident,

Joseph Rubin asked witness "what was being done out in back" and "he [Rubin] said he thought the place had better be taken care of." Plaintiff contends that the foregoing evidence, in addition to defendants' "pleading admissions" constituted sufficient evidence to make a case for the jury.

■■ We have held, however, that the efficacy of the "admissions" evidence was destroyed by other positive evidence adduced by plaintiff. Consequently the question is whether Rubin's direction to unknown persons, one of whom could have been Herman Strecker's brother, to fix the railing as best they could, was, considered in the light of all of plaintiff's evidence, sufficient to make a submissible case on the issue of retention of control. We have the view that it was not. That, for these reasons. It was admitted that defendants were the lessees of the entire premises and the lease under which they held was put in evidence by plaintiff. That lease showed that defendants as lessees had an obligation to the owners (irrespective of any obligation to plaintiff) to keep the entire building in good repair. Thus, Joseph Rubin had a duty to the owners to see that the stairway was repaired. Furthermore, as we have noted, plaintiff's evidence negatived the proposition of defendants' liability by virtue of any duty to maintain the common porch as plaintiff's landlord. Under those circumstances, we are of the opinion that defendant Rubin's direction to fix the railing was insufficient, under all of plaintiff's evidence, to constitute an admission from which a jury reasonably could find that defendants retained control of the stairway. Cf. Turner v. Ragan, Mo., 229 S.W. 809, 812 [7].

It must follow from all that we have said that plaintiff could not make a submissible case against defendants without adducing evidence tending to show what defendants' duty was as to Strecker. That, as noted, is because under plaintiff's evidence, plaintiff could recover from defendants only if defendants had breached a duty to Strecker, the landlord of plaintiff's parents. Plaintiff's evidence failed to show what the relationship was between defendants and Strecker and plaintiff's evidence, standing alone, was thereby insufficient to make a submissible case. And defendants' evidence did not supply the deficiency. As noted, defendants' evidence not only failed to supply that deficiency but, on the contrary, showed that Strecker was defendants' lessee of the entire second and third floors including the stairway in question. The written sublease between defendants and Strecker contained no provision whereby defendants expressly retained control of the stairs but, on the contrary, that lease provided that "Lessor does hereby sublease to the Lessee [Strecker], the second and third floors of the said premises, together with the entrance and stairways leading thereto for a term commencing June 1, 1951, and expiring March 31, 1956, to be used by the Lessee in the operation and conduct of a business devoted to the renting of apartments and rooms for dwelling purposes." (Bracketed insert ours.)

■ Thus, Strecker was defendants' tenant of the entire premises in question. Defendants, therefore, were not liable to Strecker or those seeking to recover in his right for defects in the rented premises, unless, at the time of leasing, defendants concealed from Strecker a known dangerous condition. Warner v. Fry, 360 Mo. 496, 499, 228 S.W.2d 729, 730 [1]. Plaintiff does not contend that his evidence showed that any defect which existed in the 2″ x 4″ railing was one which was known or should have been known to defendants and which they concealed from Strecker at the time he became defendants' sublessee.

We must conclude, therefore, that the jury reasonably could not have found under plaintiff's evidence, standing alone, or under all the evidence, either that defend-

**300**

ants retained control of the stairs, or that defendants concealed from Strecker a known dangerous condition. The trial court did not err in directing a defendants' verdict and the judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.