379 P.2d 149

Madeline SPAIN, Appellant,

v.

Donald. W. KELLAND, Appellee.

No. 6946.

Supreme Court of Arizona.

In Division.

Feb. 28, 1963.

Rehearing Denied April 2, 1963.

Cavanagh & O'Connor, Phoenix, for appellant.

Brandt & Baker, Yuma, for appellee.

UDALL, Vice Chief Justice.

Appellant was defendant in a suit for personal injuries. Plaintiff received a verdict and judgment. Defendant complains of the refusal of the trial judge to direct

a verdict at the end of plaintiff's case, at the end of all the evidence, and in refusing to grant the defendant's motion for a judgment non obstante veredicto.

■ We must, therefore, view the evidence and all lawful inferences to be drawn from the evidence in the light most favorable to the plaintiff. Neiman v. Jacobs, 87 Ariz. 44, 347 P.2d 702.

Defendant was the owner of a building in which plaintiff was hurt. It had been built by her for use as a tavern and had been used as such by her. Some years prior to the accident, she leased the building to her son, who in turn subleased it to a partnership composed of two men. The partnership was using the building as a tavern at the time of the injury. The son and the partners were also defendants and judgments were obtained against them. They have not appealed.

The plaintiff was an invitee of a tenant of the defendant. He seeks to uphold the verdict and judgment by showing that the defendant built the tavern in such a manner as to create an inherently dangerous condition when it was used for the purpose for which it was built. The evidence shows that the inside of the tavern was 25 by 40 feet. There was a bar at one end of the room. A small wall behind which was an area for a dance band was set up at the other end. Dances were held in the bar and had been held there before the partners took over the business. A fireplace was built into one of the side walls. The fireplace jutted into the room about one and one-half feet. A hearth 3 to 4 feet wide jutted even further. The hearth was 2 inches higher than the floor level of the rest of the room.

■ The hearth and the floor had been painted the same color by the son of defendant (as lessee). By the time of the accident, most of the paint had worn off the hearth and the front half had returned to its natural color. This fact and the fact that the plaintiff was color-blind, entitled the jury to find that the painting did not change the condition of the tavern so far as this plaintiff was concerned. Plaintiff testified his color blindness kept him from knowing the color of the floor.

The only sources of daylight were two glass-brick windows at the end of the room opposite the bar and about 30 feet from the fireplace. These windows had been covered with bamboo matting by defendant's son, but he testified that the matting did not cut down the light from the windows very much. Again, the jury was entitled to find that there was no substantial change in the tavern from the time it was first built by the defendant. The lighting in the tavern was dim, and the defendant testified that the inside of the premises was substantially the same as when she had operated the bar.

A table with chairs was in place in front of the fireplace. This furniture had been

moved into the tavern by defendant's son after he took the business over. When defendant ran the business she had some rattan settees with a low table in front of them in front of the fireplace. The jury could well have concluded that the change in the type of furniture did not result in a substantial change in the condition of the premises. This is especially true since the new furniture was given to the tenant by defendant and moved in the tavern with her permission. On the same side of the room with the fireplace (the fireplace being near the center) were the booths, the restrooms, and the outside door. The plaintiff was hurt when he tripped over the hearth and fell while carrying several bottles of beer around a table. Plaintiff argued that the tavern was so built and that the furniture was placed so that there was a natural walkway down the same side of the room and in front of the fireplace. As the hearth with its two-inch rise jutted into this natural walkway and as the light was dim, there was a dangerous condition which constituted negligence.

By its verdict the jury showed that it agreed with the plaintiff. Although this is a close case we cannot say as a matter of law that the jury was wrong. Dillow v. City of Yuma, 55 Ariz. 6, 97 P.2d 535. The jury also found that the dangerous condition existed at the time defendant leased the tavern and that she knew or should have known of the danger that a patron would be hurt because of its existence.

■ The issue in this case is whether and under what conditions a landlord is liable for injuries to an invitee of a tenant of the landlord. Defendant argues and plaintiff concedes that generally a landlord is not liable for injuries to an invitee of a tenant. Plaintiff urges, however, that this case falls in the "Public Use" exception to the general rule. This exception is stated in 2 Harper and James, Sec. 27.16, p. 1510, The Law of Torts, as follows:

*"The Public Use Exception.* Where land is leased for use involving 'the admission of a large number of patrons of [the] lessee,' a good many cases have held the lessor liable for unreasonably dangerous conditions which he knew about if he should have realized that the lessee would probably not remedy them."

The phrase "a large number of persons" is quoted from The Restatement of the Law of Torts. See also Prosser on Torts, 2d Ed. Sec. 80. Restatement of the Law of Torts, Sec. 359. The basis for charging the lessor with realizing that the tenant would admit patrons before fixing the defect may be that

"The nature of the defect might itself be structural or more or less permanent." Harper & James, supra, at p. 1513.

The hearth of the fireplace in the instant case can be one of this class of defects.

Defendant argues that this court should not adopt the "public use" exception and that even if the exception should be adopted that it does not apply to a tavern as by its nature a tavern is not such a place as will accommodate a " * * * large number of persons as patrons * * *." Defendant refers us to Warner v. Fry, 360 Mo. 496, 228 S.W.2d 729, in which the Missouri court refused to apply the exception to a tavern on the ground that the exception in The Restatement:

" * * * contemplates the assembly of a large number of persons at the same time on the premises * * *." 360 Mo. at 501, 228 S.W.2d at 731.

As to the first argument we note that the adoption of the public use exception is consistent with our decision in Middleton v. Green, 35 Ariz. 205, 276 P. 322. As to the second argument, Prosser on Torts, 2d Ed. Sec. 80, p. 470, discussed Sec. 359 of The Restatement and Warner v. Fry, supra, as follows:

"The Restatement of Torts has rather unaccountably taken the position that the 'public use' exception applies only to places leased for the purpose of admitting the public in large numbers; and there are a few cases [citing Warner v. Fry, supra] which have accepted the limitation. It appears quite impossible to find any justification for it, if the landlord's responsibility is a public one."

2 Harper and James, supra, states at page 1511:

"There is nothing in the negligence principle, for instance, that would require 'a large number of persons' or a 'semi public use'. Yet some courts [citing Warner v. Fry, supra] and The Restatement would so confine the present rule."

We adopt the majority rule and do not limit the "public use" exception to situations where the lease contemplates a large number of people *at the same time*. And where the majority rule is in effect the exception has justified imposing liability on a landlord for injuries received by an invitee of his tenant, caused by a structural defect in a beer parlor, Nelson v. Hokuf, 140 Neb. 290, 299 N.W. 472.

Affirmed.

BERNSTEIN, C. J., and JENNINGS, J., concur.