Dale E. LEWIS, Appellant–Respondent,

v.

Mary BIEGEL, Respondent–Appellant.

Nos. WD 72049, WD 72088.

Missouri Court of Appeals,
Western District.

Feb. 21, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2012.

Application for Transfer
Denied May 29, 2012.

John H. Norton, Kansas City, MO, for appellant.

Thomas M. Ward and Russell F. Watters, St. Louis, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, MARK D. PFEIFFER, Judge and ROBERT M. SCHIEBER, Special Judge.

LISA WHITE HARDWICK, Chief Judge.

This appeal arises from a judgment entered on two personal injury claims brought by Dale Lewis against Mary Biegel as the defendant *ad litem* for her deceased husband, Joseph Biegel. Pursuant to a jury verdict, the circuit court entered judgment against Mr. Lewis on Verdict A and in favor of Mr. Lewis on Verdict B with an award of $337,315.14 in damages. Mrs. Biegel has appealed the judgment on Verdict B, and Mr. Lewis has cross-appealed the denial of his negligence claim on Verdict A. For reasons explained herein, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Lewis began working as an installer for Biegel Refrigeration and Electric Company, Inc. ("Biegel, Inc.") in 1972, when the business was owned and operated by Mr. and Mrs. Biegel. The Biegels also owned the building at 109 S. Main, Brookfield, Missouri, where the business was located.

Sometime between 1975 and 1980, Mr. Biegel made alterations to the lift mechanism of an elevator that was the sole means of access to the second floor of the building from the basement and first floor. The alterations included replacing the cable and pulley drive system with an electrically-powered chain hoist. Mr. Biegel also disconnected and removed part of the elevator's failsafe emergency brake system because it would not operate with the chain hoist.

In 1984, the Biegels sold Biegel, Inc. to Leslie and Jean Eggerman. The Biegels maintained ownership of the building, which they leased to Biegel, Inc. Under the terms of the lease, Biegel, Inc. was responsible for the maintenance and repair of the building's interior, including the elevator. The Eggermans had no knowledge of the alterations Mr. Biegel had made to the elevator in the years prior to the lease.

In the fall of 1997, the building's elevator became stuck between the first and second floor and eventually fell to the basement floor, shattering the wooden platform. Two passengers—Jean Eggerman and a customer, Dennis Fletcher—were able to exit the elevator before it fell to the basement. The elevator failure was caused by a shearing of the spline, or gears, inside the chain hoist.

After the incident, Mr. Lewis and other Biegel, Inc. employees were assigned the task of putting the elevator back in operation. They replaced the spline gear that had sheared off and rebuilt the platform. Mr. Lewis placed boards across the shaft at the first floor to prevent the elevator from going to the basement. No changes were made to the hoist or braking systems, and the elevator was returned to service with the same design as before the 1997 incident.

On October 8, 1998, Mr. Lewis was riding the elevator to access the second floor

when the chain hoist broke, causing the elevator to fall to the first floor. Mr. Lewis suffered serious injuries.

In October 2008, Mr. Lewis filed personal injury claims against Mrs. Biegel as defendant *ad litem* for Mr. Biegel, who was deceased. At trial, Mr. Lewis presented expert testimony from Joseph Stabler, a licensed elevator inspector, who investigated the alterations to the elevator at 109 S. Main and the subsequent accidents. Mr. Stabler explained that the replacement of the elevator's suspension system with a power-driven chain hoist was improper and dangerous because such devices were never intended to be used on elevator platforms or to transport passengers. The chain hoist was designed solely for the purpose of moving material items, such as lifting products or equipment off of a dock. Mr. Stabler further explained that the installation of the chain hoist system at 109 S. Main was improper and dangerous because it resulted in the disconnection of the elevator's failsafe emergency brake system.

Mr. Stabler referenced a BOCA National Building Code provision that requires building owners to notify the City of any elevator accident that results in personal injury or property damage.[1] The code prohibits the use of any such elevator until City officials have reviewed and approved it for continued operation. Mr. Stabler found no records to indicate that the 1997 elevator accident at 109 S. Main had ever been reported to the City. He concluded that if the accident had been reported, Mr. Lewis would not have been injured in the 1998 elevator accident, because the City would have shut down the elevator until the chain hoist was replaced with a proper lift mechanism and failsafe emergency brake.

At the close of evidence, the circuit court denied Mrs. Biegel's motions for directed verdict and submitted two negligence claims to the jury in verdict directors A and B. Verdict director A instructed the jury to determine whether Mr. Biegel was negligent in failing to disclose a known dangerous condition of the property at the time of the lease in 1984. Verdict director B instructed the jury to determine whether Mr. Biegel was negligent in failing to report the 1997 elevator accident to the City of Brookfield ("City").

The jury found in favor of Mrs. Biegel and against Mr. Lewis on the premises liability claim in Verdict A. On the "failure to report" claim in Verdict B, the jury assessed 85% fault to Mrs. Biegel, 15% fault to Mr. Lewis, and damages in the amount of $396,841.35. The court accepted the verdicts and granted judgment in favor of Mr. Lewis in the amount of $337,315.14 on Verdict B. The court denied all post-trial motions, including Mrs. Biegel's motion for judgment notwithstanding

1. The BOCA National Building Code is a publication of the Building Officials and Code Administrators International, Inc. The code, which was adopted by the City of Brookfield in Ordinance No. 90–20, states:

 **2604.5 Accidents reported and recorded:** The owner of the building shall immediately notify the code official of every accident involving personal injury or damage to apparatus on, about or in connection with any equipment covered by this article, and shall afford the code official every facility for investigating such accident. When an acci-

 dent involves the failure, breakage, damage or destruction of any part of the apparatus or mechanism, it shall be unlawful to use such device until after examination by the code official is made and approval of the equipment for continued use is granted. It shall be the duty of the code official to make a prompt examination into the cause of the accident and to enter a full and complete report thereof in the records of the building department. Such records shall be open for public inspection at all reasonable hours.

the verdict (JNOV) or, in the alternative, motion for new trial.

## II. POINTS ON APPEAL

Mrs. Biegel appeals the judgment awarding damages to Mr. Lewis on his negligence claim in Verdict B. In the event the judgment on Verdict B is reversed, Mr. Lewis has cross-appealed the judgment denying his alternative negligence claim in Verdict A. Accordingly, we first address the points in Mrs. Biegel's appeal and then, if necessary, the cross-appeal.

### A. Appeal of Judgment on Verdict B

Mrs. Biegel brings multiple points, all contending that the trial court erred in submitting the claim that Mr. Biegel was negligent in failing to report the 1997 elevator accident to the City of Brookfield. Specifically, Mrs. Biegel argues the jury should not have been allowed to consider the "failure to report" claim because it was barred by the landlord immunity doctrine and the statute of limitations, and it was not supported by substantial evidence. Based on these arguments, Mrs. Biegel asserts the court should have granted her motions for directed verdict, JNOV, or new trial, because Mr. Lewis failed to prove his claim as a matter of law.

 "We review the trial court's denial of motions for directed verdict and JNOV *de novo* to determine whether the plaintiff has made a submissible case." *U.S. Neurosurgical, Inc. v. Midwest Div.– RMC, LLC,* 303 S.W.3d 660, 664 (Mo.App. 2010). "To make a submissible case, a plaintiff must present substantial evidence that tends to prove the facts essential to plaintiff's recovery." *Id.* (*quoting Upter-*

*grove v. Hous. Auth. of City of Lawson,* 935 S.W.2d 649, 651 (Mo.App.1996). We view the evidence "in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Dhyne v. State Farm Fire & Cas. Co.,* 188 S.W.3d 454, 456–57 (Mo. banc 2006).

### 1. Landlord Immunity Doctrine

 Missouri recognizes the common law rule that "a landlord generally is not liable to a tenant's business invitees for injuries caused by defects on the premises." *McKinney v. H.M.K.G. & C., Inc.,* 123 S.W.3d 274, 278 (Mo.App.2003). This doctrine of landlord immunity is applicable to shield a landlord from a premises liability claim on property the landlord has leased. "A lease is regarded as equivalent to a sale of the premises for the term, so the general rule is that the lessor is under no obligation to repair leased premises[.]" *Warner v. Fry,* 360 Mo. 496, 228 S.W.2d 729, 730 (1950). The immunity is rooted in the concept that a landlord should not be responsible for dangerous conditions on premises over which he or she no longer maintains control, with some exceptions.[2]

 Mrs. Biegel contends the "failure to report" claim in Verdict B should have been barred by the landlord immunity doctrine. In response, Mr. Lewis argues that this defense was not raised at trial and, in any case, does not shield liability for duties imposed by the building code.

---

**2.** Notable exceptions to the landlord immunity doctrine include the following: "1) where the landlord had superior knowledge of a dangerous condition not discoverable by his tenant and he fails to warn of said condition; 2) where the injury occurs in an area over which the landlord retains actual control; 3)

where the landlord is responsible for premises maintenance and repair; or 4) where the landlord leases for a 'public use' premises that are in a dangerous condition." *Lammert v. Lesco Auto Sales,* 936 S.W.2d 846, 849 (Mo.App.1996).

Verdict director B was based on Instruction 12, which submitted the "failure to report" negligence claim as follows:

> You must assess a percentage of fault to Mary Biegel if you believe:
>
> First, Joe Biegel failed to notify the City of Brookfield of the 1997 elevator incident at 109 S. Main, and
>
> Second, Joe Biegel was thereby negligent, and
>
> Third, such negligence directly caused or directly contributed to cause damage to plaintiff Dale Lewis.

In support of this claim, Mr. Lewis presented expert testimony regarding a building code provision that required building owners to notify the City of any elevator accidents involving personal injury or property damage. The expert found no record that the 1997 elevator accident at 109 S. Main was ever reported to the City. Mr. Lewis requested the court to submit a negligence claim based on Mr. Biegel's failed duty to give notice of the accident. Although this claim was not pled in the original petition, the court allowed Mr. Lewis to amend the pleading to conform to the evidence at trial and submit the claim in Instruction 12.

At the jury instruction conference, Mrs. Biegel did not object to Instruction 12 on grounds of landlord immunity. Her sole objection cited the lack of the evidence to support the "failure to report" claim.[3] Mrs. Biegel also did not assert landlord immunity as a basis for challenging the "failure to report" claim in her motion for directed verdict at the close of all evidence. She waived the defense by failing to raise it before the case was submitted to the jury. *See Business Men's Assur. Co. v.*

*Graham,* 891 S.W.2d 438, 455 (Mo.App. 1994).

The first time Mrs. Biegel asserted the landlord immunity as a defense to Verdict B was in her amended motion for JNOV or new trial. The post-trial objection was untimely for purposes of appeal. Absent a proper motion for directed verdict, a motion for JNOV preserves nothing for appellate review. *McRaven v. F–Stop Photo Labs, Inc.,* 660 S.W.2d 459, 461 (Mo.App. 1983). "A party may not utilize a motion for new trial to raise an objection that should have been raised during trial." *Colley v. Tipton,* 657 S.W.2d 268, 272 (Mo. App.1983).

■ Even if Mrs. Biegel had preserved the landlord immunity defense, she would not have been entitled to a directed verdict on the "failure to report" claim. The immunity is applicable to premises liability claims because a landlord generally has no duty to repair or maintain the safety of leased premises. However, the "failure to report" claim did not arise from a theory of premises liability. It derived from a local building code provision that required building owners to notify the city of elevator accidents. The "failure to report" claim was based on the allegation that Mr. Biegel, as the building owner, had a duty to notify the City about the 1997 elevator incident that resulted in property damage. While the landlord immunity doctrine might relieve Mr. Biegel of certain responsibilities as a leaseholder, it did not shield him as a building owner against any specific duties imposed by law.

---

3. When the court asked whether there were objections to the proposed jury instructions, Mrs. Biegel's counsel responded:

> Yes. I object to Instruction No. 12. This is a verdict-directing instruction pertaining to the theory that Joe Biegel failed to notify the City of Brookfield of a 1997 elevator incident at 109 South Main Street. The basis for [the objection] is that there's no evidence in this case upon which to base the submission of this instruction.

We conclude the negligence theory in verdict director B was submissible and, therefore, the point on appeal is denied.

## 2. Statute of Limitations

■ When Mr. Lewis was permitted to amend his Petition to conform to the evidence at trial, the court also allowed Mrs. Biegel to amend her Answer by adding a statute of limitations defense to the new "failure to report" claim. On appeal, Mrs. Biegel contends the court erred in submitting the new claim because it was barred by the five-year statute of limitations in Section 516.120.[4] She argues that the "failure to report" claim accrued in 1998 (when the second elevator accident occurred) but was not asserted until eleven years later, in 2009, when Mr. Lewis amended his Petition at trial.

Mrs. Biegel did not raise this statute of limitations defense in her motion for directed verdict at the conclusion of evidence. Nor did she raise it at the instructional conference as an objection to the submission of Instruction 12 and verdict director B. The first time she asked the court to apply the statute of limitations defense was in her post-trial JNOV motion. Under the circumstances, she waived this defense as a basis for objecting to the submissibility of the "failure to report" claim. *Graham*, 891 S.W.2d at 455.

■ We recognize that the late addition of the new negligence theory at the close of evidence limited the time frame for asserting the statute of limitations defense. Nonetheless, Mrs. Biegel bypassed two opportunities to raise the affirmative defense before the case was submitted to the jury. Pursuant to Rule 70.03,[5] "[n]o party may assign as error the giving or failure to give instructions unless that par-

ty objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the ground of the objection." The purpose of this rule is to avoid error and allow the trial court to make an intelligent ruling. *Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 718 (Mo.App.2004). Moreover, the failure to move for a directed verdict on specific grounds waives any contention that the plaintiff did not make a submissible case. *Johnson v. Allstate Indem. Co.*, 278 S.W.3d 228, 232 (Mo.App.2009); see also Rule 72.01(a).

After moving to amend her Answer, Mrs. Biegel never asked the court to apply the statute of limitations defense prior to submission of the case. She failed to raise it in her motion for directed verdict at the close of evidence or at the instructional conference. She never argued that the defense barred the jury's consideration of the "failure to report" claim. Because Mrs. Biegel abandoned the statute of limitations defense and did not preserve it for appeal, the point is denied.

## 3. Substantial Evidence

■ In her remaining points on appeal, Mrs. Biegel contends the circuit court erred in submitting the "failure to report" claim because it was unsupported by substantial evidence. She argues there was no evidence to show that the City's building code provision was in effect at the time of the 1997 elevator accident. She further argues there was no evidence that Mr. Biegel knew of the 1997 elevator accident and failed to report it. Finally, she asserts the evidence did not show Mr. Biegel's conduct as the proximate cause of Mr. Lewis's injury, in that there were

4. All statutory references are to the Revised Statutes of Missouri (2000) as updated in the Cumulative Supplement (2009) unless otherwise noted.

5. All rule citations are to Missouri Rules of Civil Procedure (2011) unless otherwise noted.

other intervening causes of the 1998 accident.

At trial, Mr. Lewis's counsel requested to admit into evidence Ordinance No. 90-17, in which the City of Brookfield adopted all provisions of the BOCA National Building Code, including those related to the reporting of elevator accidents. Although an expert witness had testified about the reporting requirements in the BOCA Code, Mr. Lewis's counsel explained that the ordinance was being offered to prevent Mrs. Biegel from arguing that there was no proof the City had adopted the code provisions. Mrs. Biegel's counsel agreed the ordinance was admissible for the purpose of showing local application, but counsel requested that the exhibit not be shown to the jury because jurors generally are not permitted to review "statutes and ordinances." Mrs. Biegel's counsel also acknowledged that he "might get spanked by the Court" if he were to argue that there was no evidence regarding the City's adoption of the building code. The trial court thereupon admitted the ordinance as Exhibit 61 on the condition that it not be passed to the jury.

Against this backdrop, Mrs. Biegel has carefully framed her argument on appeal to avoid stating there was no evidence the City adopted the BOCA Code. Instead, she now argues there was no evidence that the building code provision was *still in effect* at the time the 1997 accident occurred. We disagree. The Ordinance, admitted as Exhibit 61, indicates it was passed by the City of Brookfield on October 23, 1990, and that it adopted all provisions of the BOCA National Building Code. Without contrary evidence, the passage date allows an inference that the ordinance was still in effect at the time of the 1997 elevator accident. The ordinance also supported the expert testimony of Joseph Stabler that the BOCA provisions required the owner of the building at 109 S. Main to report the 1997 elevator accident. Regardless of whether the jurors saw the ordinance, they could rely on Mr. Stabler's testimony in concluding that the building code provision was in effect and applied to Mr. Biegel, as owner of the building, at the time of the 1997 accident.

■ We also reject Mrs. Biegel's argument that there was no evidence Mr. Biegel knew about the 1997 elevator accident and failed to report it. Mr. Lewis presented deposition testimony from Ted Thudium, an employee of Biegel, Inc., that Mr. Biegel came to the building and looked at the elevator after the 1997 accident and before the elevator was repaired:

Q [by Counsel]: Do you remember seeing [Joe Biegel] in the building when the elevator was down and in pieces or being rebuilt?

A [by Thudium]: I think Joe and Mary [Biegel] both came in at one time and looked. You know, I believe it was at the basement, but—

Q: So you mean this was after it had fallen, and it was still in pieces?

A: Yes.

Q: Do you remember any specific conversations with them or general conversations where they said, 'Boy, what the heck happened or words to that effect?

A: No, in fact, I don't think I talked to them. I just remember them coming in and like I said, I was coming in. I would get call slips and go back out.

Q: So you just remember a situation where they came in and were looking down at the hole in the basement?

A: Yes.

Q: And the elevator in pieces?

A: Yes.

Viewed in a light most favorable to the verdict, this testimony was sufficient to show that Mr. Biegel had direct knowledge of the 1997 elevator accident before the

elevator was repaired. The record further indicates that the accident was never reported to the City. As part of his expert investigation, Mr. Stabler spoke with City officials regarding the 1997 accident and reviewed the local ordinances and practices. He testified that, to his knowledge, there was no report of the 1997 accident. Mr. Stabler explained that only the building owner—not the tenant—had the obligation to notify the City. He concluded that if the building owner had reported the first accident, the City would have shut down the elevator until the chain hoist was replaced with a proper operating system and the 1998 accident would never have occurred.

In the context of his investigation, Mr. Stabler's conversations with City officials and his review of the ordinances and procedures provided a reasonable basis for his conclusion that the 1997 accident was never reported, and that the lack of reporting prevented the City from taking action to ensure the deficiencies in the elevator's operating system were corrected. The evidence was sufficient to support the submission of Instruction 12 and allow the jury to consider whether Mr. Biegel was negligent in failing to report the 1997 accident.

 Finally, Mrs. Biegel argues the Verdict B claim was not submissible because there was no evidence that Mr. Biegel's failure to report the 1997 accident was the proximate cause of Mr. Lewis's injury. To make a submissible negligence case, a plaintiff must establish that the defendant breached a duty to protect the plaintiff from injury and that the breach proximately caused injury to the plaintiff. *Richey v. Philipp*, 259 S.W.3d 1, 8 (Mo. App.2008). The practical test for proximate cause is whether the injury is a reasonable and probable consequence of the defendant's conduct. *Id.* at 9.

 Generally, the question of proximate cause is one for the jury, because the determination of the causal relationship between the negligence and the injury is dependent on the particular facts of each case. *Lewis v. Biegel*, 204 S.W.3d 354, 362 (Mo.App.2006). Proximate cause will only be a question for the court if the evidence reveals the existence of an intervening cause. *Id.* An intervening act will be found to sever the causal connection when it is a "new and independent force which so interrupts the chain of events that becomes the responsible, direct, proximate, and immediate cause of the injury[.]" *Gathright v. Pendegraft*, 433 S.W.2d 299, 308 (Mo.1968) (internal quotation omitted).

Mrs. Biegel argues that Mr. Biegel's failure to report the 1997 elevator accident was not the proximate cause of the 1998 accident because there were two intervening factors: (1) Biegel, Inc. did not report the 1997 accident to the City; and (2) Mr. Lewis and other Biegel, Inc. employees made repairs to the elevator, following the 1997 accident. The record, however, does not establish that these events severed the causal connection between Mr. Biegel's negligent conduct and the injuries resulting from the 1998 accident.

 First, the BOCA building code placed sole responsibility on the building owner—and not the tenant—to report the 1997 accident. Biegel, Inc. had no duty to comply with the code provision and, therefore, its inaction did not constitute a "new and independent force" that interrupted the chain of events stemming from Mr. Biegel's failure to report. Mr. Stabler testified that if the building owner had notified the City of the 1997 accident as required by the Code, the 1998 accident would not have occurred. This testimony was sufficient to show Mr. Biegel's failed duty as the proximate cause of the 1998 accident and Mr. Lewis' resulting injuries.

Second, there is no evidence to suggest that the 1998 accident was in any way caused by the repairs made after the 1997 accident. It is undisputed that the repair job did not replace or alter the chain hoist system that had been installed by Mr. Biegel. The repairs merely returned the elevator to the condition it was in prior to the 1997 accident. Mr. Stabler testified that the elevator was defective because of the chain hoist operating system and the disconnection of the failsafe emergency brake system. The repairs did not make the operating system any more defective or dangerous than when it was originally installed. Accordingly, the repair job was not an intervening factor that severed the causal relationship between Mr. Biegel's negligence in failing to report the 1997 incident and the defective condition of the elevator that resulted in the 1998 accident and Mr. Lewis's injuries.

Mr. Lewis presented sufficient evidence to make a submissible negligence claim under Instruction 12 and Verdict Director B. We therefore deny the point on appeal and affirm the trial court's judgment on Verdict B.

### B. Cross–Appeal of Verdict A

Mr. Lewis raises four points of instructional error in his cross-appeal of the judgment entered against his negligence claim in Verdict A. Because we have affirmed the judgment in favor of Mr. Lewis on his alternative negligence claim in Verdict B, he is not entitled to further relief. Accordingly, the cross-appeal is denied.

### CONCLUSION

We affirm the trial court's judgment.

All Concur.