HARRY BRENNER, RESPONDENT, v. SOCONY VACUUM OIL COMPANY, APPELLANT.—158 S. W. (2d) 171.

Kansas City Court of Appeals. January 5, 1942.

*James P. Kem* and *J. R. Kaspar* for appellant.

526

*Cornelius Roach* and *Daniel L. Brenner* for respondent.

BLAND, J.—This is an action for damages for personal injuries. There was a verdict and judgment in favor of plaintiff in the sum of $800, and defendant has appealed.

The facts show that plaintiff was injured on April 17, 1938, while upon premises owned by defendant, in Kansas City. The premises, at the time, were being operated as a filling station. Plaintiff was standing by his car being serviced with gasoline on the premises, when he was injured by being struck by a truck operated by one of the attendants at the filling station.

There is no contention that the attendant was not negligent. The sole question raised on this appeal is whether one Smith, who was managing the filling station at the time of plaintiff's injury, was a lessee of the premises or was he acting as the agent or employee of the defendant. In this connection defendant contends that Smith was operating his own business at the filling station, that there is no liability against the defendant, and that its instruction in the nature of a demurrer to the evidence should have been given. This requires the evidence to be stated in its most favorable light to plaintiff. The evidence shows that defendant owned the land, the buildings, and the equipment at the filling station, the pumps, tanks, compressor, signs, hydraulic lift, greasing equipment, tire hose, and a part, if not all, of the office equipment.

Smith entered defendant's employ about a year and shalf prior to September 3, 1936, operating the station on a salary and commission basis for the defendant. The salary and commissions amounted to in the "neighborhood" of $150 per month. On said date Smith and defendant executed two instruments purporting to create a new relationship between them. One was a lease of the premises from defendant to Smith and the other a "Dealer's Sales Agreement."

In the lease it was provided that defendant leased to Smith the filling station, the building, improvements and equipment thereon or to be placed thereon, for a period of one year at a rental of $30 per

month, plus one-half cent for each gallon of motor fuel delivered at the premises. Such rental was to be paid at the time of the delivery of the fuel. Smith agreed, among other things, to pay said rental punctually as aforesaid. It was provided that if Smith should be in default under any of the provisions of the lease, it should expire on written notice from defendant; that in case of default on the part of Smith, defendant could re-possess the property; that the lease should remain in full force from year to year unless written notice was given by either party thirty days prior to any anniversary date of the lease.

The instrument further provided that Smith agreed to indemnify the defendant against loss or liability on account of any injury to persons or property arising out of or in connection with the premises, or the use thereof; that the lessee would pay all water, sewer, gas and electricity charges and all taxes and license fees, excepting only taxes on the land, buildings, improvements and equipment. The evidence shows that this instrument remained in effect at the time plaintiff was injured.

The "Dealer's Sales Agreement" provided that defendant would sell and Smith would buy minimum and maximum quantities of gasoline, oil and greases; that defendant also would sell to Smith "Automotive Accessories and Specialties for resale at said premises;" that the products to be delivered and received should be of such grades and brands as marketed by defendant to similar dealers in the area in which the dealer's premises were located "all as determined by Company" (the defendant). That the price paid for each product should be posted or list price as posted or listed by defendant at its plant from which delivery was to be made, in effect at time and for place of delivery and applicable to that class of dealers in which at said time Smith shall fall, in accordance with defendant's classification at such time; that Smith should pay for such products, in cash, at the time of delivery, unless defendant extended credit; that Smith might, whenever requested by defendant, sell any of the products to defendant's customers on credit authorized by the company; that he should pay all property taxes and assessments, utility charges and other expenses in connection with the operation and the maintenance of the premises and the business conducted thereat, and should, unless and to the extent otherwise directed by the company, provide all permits and licenses and comply with all governmental laws and regulations, and pay the amount of any occupation and merchant's license tax, and any similar license, tax or fee in respect to the sale of goods and the operation of the business on said premises; that Smith should indemnify the defendant from any and all losses, liabilities, damages and claims, which should arise or grow out of any injury to, or death of, persons (including Smith and employees of the defendant), or injury or damage to property (including property of de-

fendant, Smith and employees of either) caused by or resulting from the use or condition of said premises, tanks, pumps, equipment and other facilities, etc.; that the contract should continue for one year and thereafter from year to year subject to the right of either party to terminate the same at the end of the original term or any anniversary date, on thirty days' prior written notice to the other; that the company might terminate the contract on any default by the dealer or suspend its terms during such default; that the contract was not assignable by Smith.

The evidence shows that this form of contract was the same as that used by defendant with all of its dealers regardless as to whether the dealer was a lessee of premises owned by the defendant.

At the time of plaintiff's injury there were employed at the station four men aside from Smith who, as before stated, managed the station. Smith hired and paid the salaries and wages of these men and gave them orders. The four employees were dressed in blue and red uniforms of like character each of which had an insignia or design thereon of a Flying Red Horse and underneath thereof the words: "Mobile Gas." These insignia were trade-marks of the defendant. Defendant did not furnish these uniforms but gave Smith the names of four companies from any one of which they might be purchased by him. There was an overhead sign at the station reading "Socony Vacuum Products" and over the grease rack a sign reading "Mobile Lubrication" and on the pumps were the words "Mobile Gas" and "Mobile Ethyl Gas." These were also trade-marks of the defendant. There were banners strung from one end of the station to the other marked "Mobile Gas" and "Products of Socony Vacuum Oil Company."

Defendant's district manager testified that it had in its employ one Hayes, who held the position of "Retail Merchandiser," whose duty it was to make regular calls on the retail "outlets" of the defendant and help them merchandise and market defendant's products; make suggestions and advise the operators of the retail outlets and help them; that "We try to maintain at our retail operations a standard of appearance and service." There was other evidence that Hayes was defendant's "supervisor." There was evidence that the new arrangement between Smith and the defendant was negotiated by Hayes and that he signed the lease as a witness thereto.

The evidence shows that defendant furnished credit cards to purchasers of its products; that Smith was not required to honor these cards, but it was to his advantage to so honor them and that he did so, and that he was given credit upon his account with defendant for the price of the products which he delivered to customers holding these cards.

Smith, testifying for the defendant, stated that in the operation of the station, after the signing of the two instruments in question, he was required to buy all of his oil and gasoline from the defendant,

but that when other products were sold he could buy them from any one he chose; that the price of the gasoline and oil sold to him was fixed by the defendant; that the price he charged the public was not so fixed but that he sold at an advance of 4½ cents per gallon for gasoline over the price he paid the defendant; that, "Q. Were you, at any time, directed or controlled by the Socony Vacuum Oil Company with reference to the retail price of the products that you sold? A. No, sir. We have a suggested price on motor oil, trying to keep it uniform for Mobiloil. But on gasoline, no;" that he earned from $150 to $160 per month under his new arrangement with defendant, or, approximately the same amount he received as salary and commissions under his previous arrangement with it.

Smith was in default in the payment of the rent required by the lease starting almost from its execution and defendant made no attempt to cancel the lease as it was privileged to do under its terms. There were many months in which Smith did not take minimum deliveries of gasoline or other products as provided by the contract. Both defendant's district manager and Smith testified to the effect that no attention was paid to the contract requiring minimum deliveries. Defendant paid all the real estate and property taxes and maintained and repaired, at its own expense, all of the physical property. Smith paid all the other taxes and utility charges. However, defendant paid one year's occupation license and a water bill, but a witness of defendant stated that these items were charged back to Smith because they were paid through mistake. Smith regularly reported to defendant the lubrication and washing income, the sale of tires, tubes and specialties although, under the terms of the lease and the dealer's sales agreement, it was not entitled to the proceeds of the sale of these items or even a report of them. Smith collected and remitted to defendant all retail sales tax collected from his customers.

Plaintiff's witness, Effie, testified that Hayes "would come in the station, look around the station, ask the man (Smith) if he had made his quota on oil, if he had made his quota on tires, what his quota was for that month, how much he had beat it, and what he thought about business in the future, and the employees of the company, and how much he was paying each individual working for him there, and prices of gasoline, and the question as to whether or not they should have a sign out in front with the price of gas on it, and what other stations in town of the Socony Vacuum Company were doing, and what could be done about a kind of work were doing there—an advertising campaign that they were doing—washing cars free with a dollar purchase of merchandise. And he would come in and tell them the station was dirty, that it needed cleaning up, and that they were going to paint the lifts inside the grease racks, and I have heard him tell Martin Wescott and Charlie Wescott, his brother, that used to work there at the time Martin worked there, that their unionalls

were too dirty working on the grease rack, and when they would get busy waiting on the public at the pumps their unionalls were too greasy to be presentable to the public—they would have to buy or rent an extra pair of unionalls and keep a little more clean. Just different things, phases, that would happen, and so forth. . . . He just gave orders in general;" that there was a mud container under the wash rack, which was called a sump hole, which would get stopped up; that Smith told Hayes he could not afford to pay for the cleaning of this sump hole; that Hayes gave him the telephone number of a man who would clean it and said "just send that in on your monthly or daily statement;" that a part of the driveway became full of ruts and Hayes told Smith to find out what it would cost to get the rocks and fix it, which was done, the rock was delivered and the driveway was fixed "by the employees."

Defendant insists that its instruction in the nature of a demurrer to the evidence offered at the close of the entire case should have been given for the reason that there is no substantial evidence tending to show that defendant was operating the gasoline service station at the time of plaintiff's injury. In support of this contention defendant largely relies upon Lindsay v. Francis et al., 107 S. W. (2d) 97; Langeley v. Imperial Coal Co., 138 S. W. (2d) 696; Barnes v. Real Silk Hosiery Mills, 108 S. W. (2d) 58; Skidmore v. Haggard, 110 S. W. (2d) 726; Bass et ux. v. K. C. Journal Post Co., 148 S. W. (2d) 548; Ross v. St. Louis Dairy Co. et al., 98 S. W. (2d) 717; Coul v. Geo. B. Peck Dry Goods Co., 32 S. W. (2d) 758, and certain cases from foreign jurisdictions, including, Ark. Fuel Oil Co. v. Scaletta (Ark.), 140 S. W. (2d) 684; and Reynolds v. Skelly Oil Co. (Ia.), 287 N. W. 823.

Plaintiff contends to the contrary, citing in support of his contention, Tomlinson v. Marshall, 236 S. W. 680; Buchholz v. Standard Oil Co., 244 S. W. 973; Heisey v. Tide Water Oil Co., 92 S. W. (2d) 922; Greene v. Spinning, 48 S. W. (2d) 51; Coffman v. Shell Pet. Corp., 71 S. W. (2d) 97; Becker v. Aschen, 131 S. W. (2d) 533.

The facts in each of these cases are unlike those in the case at bar. Of course, it would be difficult to find two cases of this character alike, but the cases cited by both parties are valuable as they lay down general principles of law applicable to situations of this kind. Some of the cases cited involve the question as to whether the person charged to be the servant of the defendant was such, or an independent contractor. Such cases are not strictly in point here for the reason that no such relationship is indicated or suggested by the evidence on either side. Smith was either operating the filling station in question as the agent or the servant of the defendant, or, he was operating it, in no capacity for the defendant, but as his own business and under a lease. There is no theory developed in the evidence by either party

indicating that he might have been operating it as an independent contractor. On this point see Becker v. Aschen, 131 S. W. (2d) 533, 539.

The cases cited by the parties, generally, follow the applicable principles laid down in "Restatement of the Law." Some of these principles are as follows:

"A servant is a person employed to perform services for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control." [Restatement of the Law of Agency, p. 483.] "Those rendering service but retaining control over the manner of doing it are not servants." [Restatement of the Law of Agency, p. 485.]

The question to be determined then is whether Smith was subject to the control or the right of control of the defendant in the operation of the filling station in question at the time of plaintiff's injury.

The provisions of the lease and the Dealer's Sales Agreement standing alone, might possibly indicate that Smith was not employed by defendant and not subject to defendant's control or right of control. However, "where the suit is not between the parties to the contract a third party can question the instrument, itself, and dispute the status it apparently creates and show that as a matter of fact the status was otherwise. [See Tomlinson v. Marshall, 208 Mo. App. 381, 236 S. W. 680, 684.]" [Greene et ux. v. Spinning, 48 S. W. (2d) 51, 57.]

Therefore, just what was the relationship between Smith and defendant must be gleaned from the two writings heretofore referred to, together with what the parties did in connection with their business relations after the signing of these writings. [Greene v. Spinning, supra, l. c. 55.]

The provisions in the contract requiring the acceptance of minimum deliveries monthly by Smith were frequently violated and no effort was made to enforce such provisions. Practically from the very inception of the new arrangements made under these writings, Smith was in default in the payment of his rent and remained at the station only by the sufferance of the defendant. Smith turned over the sales tax collected by him to defendant. He made reports to defendant concerning the lubrication and washing income, the sale of tires, tubes and specialties. The uniforms worn by the attendants at the filling station in question were similar in color and design to those selected by defendant. The advertising at the station all had defendant's name and the name of defendant's products on it, some of, defendant's own name.

All of these matters possibly might not, of themselves, affect the relationship between the parties, which the writings purport to create. However, there was more than this.

There was evidence giving rise to the inference that defendant's agent, Hayes, in his effort to carry out defendant's policy to maintain

532

a standard of appearance and service at the stations selling defendant's products, gave orders concerning the details of the operation of the station. Defendant contends that Hayes was not such an agent as to give such orders concerning which plaintiff's witness, Effie, testified, but we think to the contrary.

While this is a close case on the facts, there was ample in the testimony, viewed as a whole, from which the jury might conclude that defendant assumed the right to control the details of the operation of the filling station in question and that Smith and the attendants were its servants. If these were the facts defendant is liable for the acts of the attendant in operating the truck in question against the plaintiff, causing his injury.

The judgment is affirmed. All concur.