GERALD E. HOOVER and JULE B. HOOVER, Plaintiffs, v. SUN OIL COMPANY, James F. Barone and John Smilyk, Defendants.

*(July* 20, 1965)

CHRISTIE, J. sitting.

*Henry N. Herndon, Jr.,* (of Morris, James, Hitchens & Williams), for Gerald E. Hoover and Jule B. Hoover.

*F. Alton Tybout,* and *B. Wilson Redfearn,* for Sun Oil Co.

Superior Court of Delaware for New Castle County. No. 368 Civil Action, 1964.

This case is concerned with injuries received as the result of a fire on August 16, 1962 at the service station operated by James F. Barone. The fire started at the rear of plaintiff's car where it was being filled with gasoline and was allegedly caused by the negligence of John Smilyk an employee of Barone. Plaintiffs brought suit against Smilyk, Barone and Sun Oil Company (Sun) which owned the service station.

Sun has moved for summary judgment as to it on the basis that Barone was an independent contractor and therefore the alleged negligence of his employee could not result in liability as to Sun. The plaintiffs contend instead that Barone was acting as Sun's agent and that Sun may therefore be responsible for plaintiff's injuries.

Barone began operating this business in October of 1960 pursuant to a lease dated October 17, 1960. The station and all of its equipment, with the exception of a tire-stand and rack, certain advertising displays and miscellaneous hand tools, were owned by Sun. The lease was subject to termination by either party upon thirty days' written notice after the first six months and at the anniversary date thereafter. The rental was partially determined by the volume of gasoline purchased but there was also a minimum and a maximum monthly rental.

At the same time, Sun and Barone also entered into a dealer's agreement under which Barone was to purchase petroleum products from Sun and Sun was to loan necessary equipment and advertising materials. Barone was required to maintain this equipment and to use it solely for Sun products. Barone was permitted under the agreement to sell competitive products but chose to do so only in a few minor areas As to Sun products, Barone was prohibited from selling them except under the Sunoco label and from blending them with products not supplied by Sun.

Barone's station had the usual large signs indicating that Sunoco products were sold there. His advertising in the classified section of the telephone book was under a Sunoco heading and his employees wore uniforms with the Sun emblem, the uniforms being owned by Barone or rented from an independent company.

Barone, upon the urging of Robert B. Peterson, Sun's area sales representative, attended a Sun school for service station operators in 1961. The school's curriculum was designed to familiarize the station operator with bookkeeping and merchandising, the appearance and proper maintenance of a Sun station, and the Sun Oil products. The course concluded with the operator working at Sun's model station in order to gain work experience in the use of the policy and techniques taught at the school.

Other facts typifying the company-service station relationship were the weekly visits of Sun's sales representative, Peterson, who would take orders for Sun products, inspect the restrooms, communicate customer complaints, make various suggestions to improve sales and discuss any problems that Barone might be having. Besides the weekly visits, Peterson was in contact with Barone on other occasions in order to implement Sun's "competitive allowance system" which enabled Barone to meet local price competition by giving him a rebate on the gasoline in his inventory roughly equivalent to the price decline and a similarly reduced price on his next order of gasoline.

While Peterson did offer advice to Barone on all phases of his

operation, it was usually done on request and Barone was under no obligation to follow the advice. Barone's contacts and dealings with Sun were many and their relationship intricate, but he made no written reports to Sun and he alone assumed the overall risk of profit or loss in his business operation. Barone independently determined his own hours of operation and the identity, pay scale and working conditions of his employees, and it was his name that was posted as proprietor.

Plaintiffs contend in effect that the aforegoing facts indicate that Sun controlled the day-to-day operation of the station and consequently Sun is responsible for the negligent acts of Barone's employee. Specifically, plaintiffs contend that there is an issue of fact for the jury to determine as to whether or not there was an agency relationship.

The legal relationships arising from the distribution systems of major oil-producing companies are in certain respects unique. As stated in an annotation collecting many of the cases dealing with this relationship:

"This distribution system has grown up primarily as the result of economic factors and with little relationship to traditional legal concepts in the field of master and servant, so that it is perhaps not surprising that attempts by the court to discuss the relationship in the standard terms have led to some difficulties and confusion." 83 A.L.R. 2d 1282, 1284 (1962).

In some situations traditional definitions of principal and agent and of employer and independent contractor may be difficult to apply to service station operations, but the undisputed facts of the case at bar make it clear that Barone was an independent contractor.

Barone's service station, unlike retail outlets for many products, is basically a one-company outlet and represents to the public, through Sunoco's national and local advertising, that it sells not only Sun's quality products but Sun's quality service. Many people undoubtedly come to the service station because of that latter representation.

However, the lease contract and dealer's agreement fail to establish any relationship other than landlord- tenant, and independent contractor. Nor is there anything in the conduct of the individuals which is inconsistent with that relationship so as to indicate that the contracts were mere subterfuge or sham. The areas of close contact between Sun and Barone stem from the fact that both have a mutual interest in the sale of Sun products and in the success of Barone's business.

The cases cited by both plaintiffs and defendant indicate that the result varies according to the contracts involved and the conduct and evidence of control under those contracts. Both lines of cases indicate that the test to be applied is that of whether the oil company has retained the right to control the details of the day-to-day operation of the service station; control or influence over results alone being viewed as insufficient. Those cases cited by Sun are regarded as correctly stating the law. See *Arkansas Fuel Oil Co. v. Scaletta,* 200 Ark. 645, 140 S.W.2d 684 (1940); *Cawthon v. Phillips Petroleum Co.,* 124 So.2d 517, 83 A.L.R. 2d 1276 (Dist. Ct. App. Fla., 1960); *Cities Service Oil Co. v. Kindt,* 200 Okl. 64, 190 P.2d 1007 (1948); *Texas Co. v. Wheat,* 140 Tex. 468, 168 S.W.2d 632 (1943). Those cases cited by plaintiffs to the extent that they are inconsistent with this view are not followed. It should be noted however that the same rule of law is applied in nearly all of the cases and that the differences in result are explained by different fact situations and greater evidence of oil company control. See *Edwards v. Gulf Oil Corp.,* 69 Ga. App. 140, 13 S.E.2d 843 (1943), ibid., 71 Ga.App. 649, 31 S.E.2d 677 (1944); *Brenner v. Socony Vacuum Oil Co.,* 236 Mo.App. 524, 158 S.W.2d 171 (1942); *Texas Co. v. Freer,* 151 S.W.2d 907 (Civ. App. Tex., 1941). For a conclusion that the degree of control over the method of operation is determinative, see 83 A.L.R.2d 1282, 1284 (1962).

The facts of this case differ markedly from those in which the oil company was held liable for the tortious conduct of its service station operator or his employees. Sun had no control over the retails of Barone's day-to-day operation. Therefore, no liability can be imputed to Sun from the allegedly negligent acts of Smilyk. Sun's motion for

summary judgment is granted.

It is so ordered.