Allen DUNLAP, William Dunlap and Joy Dunlap, Appellants,

v.

William "Red" HOWARD, Charles Sickinger, Jerry Sanders and Skelly Oil Company, Respondents.

No. 44375.

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 23, 1982.

William W. Eckelkamp, Eckelkamp, Eckelkamp & Wood, Washington, for appellants.

Arthur L. Smith, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for respondents.

REINHARD, Presiding Judge.

Plaintiffs appeal from an order of summary judgment entered in favor of defendant Skelly Oil Company (Skelly), designated final for purposes of appeal, pursuant to Supreme Court Rule 81.06. We affirm.

In Counts I and II of plaintiffs' six count petition, Allen Dunlap sought damages from William "Red" Howard for injuries Dunlap received while both were customers at Al and Jerry's Skelly service station in Pacific, Missouri. Allen Dunlap alleged that on March 8, 1975, Howard either negligently or intentionally fired a pistol striking him in the face, permanently paralyzing him from the neck down. In Count III, plaintiffs William and Joy Dunlap, Allen's parents, sought damages from "Red" Howard for past and future medical expenses and for loss of their son's companionship.

Counts IV, V, and VI constituted claims against defendants Charles Sickinger and Jerry Sanders d/b/a as "Al and Jerry's Skelly Station" and Skelly Oil Company, as owner of the station. In paragraphs 4, 5 and 6 of Count IV, Allen alleged that:

As a direct and proximate result of the carelessness and negligence of the Defendants . . . "Red" Howard, a known felon, was permitted on the premises and the said . . . "Red" Howard shot Plaintiff . . . with a pistol.

That Defendants, through their advertising, had invited Plaintiff to their place of business.

That Defendants owed a duty to make said premises safe for Plaintiff Allen Dunlap, but they carelessly and negligently failed to do so.

In Count V, William and Joy Dunlap sought damages for past and future medical expenses and loss of their son's companionship. In Count VI, Allen sought punitive damages from the defendants.

Skelly filed a motion for summary judgment as to Counts IV, V, and VI. In support of its motion, Skelly relied on the affidavit of R. A. Carlson, Division Manager, its lease with Sickinger and Sanders, and the pleadings. Skelly stated that it had leased the premises to Charles Sickinger on September 15, 1974 and was not in possession or control of the premises at the time of the incident. Skelly alleged there was no genuine issue of material fact. Plaintiffs' attorney filed a counter affidavit. The trial court granted Skelly's motion and denominated it final for purposes of appeal. Rule 81.06. *See, State ex rel. Schweitzer v. Greene,* 438 S.W.2d 229, 231 (Mo.banc 1969).

In ruling on a motion for summary judgment, the trial court and the appellate court must scrutinize the record in the light most favorable to the parties against whom the motion was filed and to accord to such parties the benefit of every doubt. Summary judgment may only be rendered where it is made manifest by the pleadings, depositions and admissions on file, together with any affidavits that there is no genuine issue of material fact. Rule 74.04(c). A genuine issue of fact exists for the purpose of avoiding a summary judgment whenever there is the slightest doubt as to the facts. The burden rests upon the movant to show by "unassailable proof" that there is no genuine issue of fact. *Edwards v. Heidelbaugh*, 574 S.W.2d 25, 26–27 (Mo.App.1978). When a party to litigation is confronted by a proper motion for summary judgment under Rule 84.04 that party must come forward with specific facts which demonstrate that a material issue does, in fact, exist, otherwise he is vulnerable to the harsh and drastic remedy of summary judgment. 574 S.W.2d at 28.

■ Under most circumstances, a lessor of land is not subject to liability for injuries to his tenant or his invitees caused by dangerous conditions. *Warner v. Fry*, 360 Mo. 496, 228 S.W.2d 729 (1950). An exception to this rule exists for premises leased for a "public use" which involves the admission of a large number of patrons of his lessee. *Warner v. Fry*, 228 S.W.2d 729, 730 (Mo.1950); *Brown v. Reorganization Investment Co.*, 350 Mo. 407, 166 S.W.2d 476 (1942). Plaintiffs contend the Skelly station was a "public use" and consequently comes within the exception above. Assuming, without deciding that allowing a known felon on the premises is an unsafe condition, we think it evident under Missouri law, leasing for a "public use" applies only to public exhibitions and entertainments. Liability based on this theory has no application to the ordinary commercial establishment.

In *Warner v. Fry*, the Supreme Court said:

[A] leasing for a "public use," . . . contemplates the assembly of a large number of persons at the same time on the premises, either upon one or several occasions or continuously throughout the period of a lease. . . . [W]e hold that the "public use" rule does not apply to ordinary commercial establishments, open to the patronage of such persons as may be attracted thereto as customers, the primary purpose of which is not to assemble large groups at the same time. 228 S.W.2d at 731.

All of the facts from the pleadings, affidavits and interrogatories before the court establish that Al and Jerry's service station was an "ordinary commercial establishment." There were no facts which suggest otherwise. Consequently, there is no genuine issue of material fact on this point.

As an alternative basis for liability, plaintiffs contend that a service station lease is of such a peculiar nature that if it is determined the lessor controls the lessee, he will be held liable. *Brenner v. Socony Vacuum Oil Co.*, 236 Mo.App. 524, 158 S.W.2d 171 (1942). See, 83 ALR2d 1282. Such liability is based on the lessee being the agent or servant of the lessor. 158 S.W.2d at 174. Plaintiff's petition, however, neither directly nor indirectly alleges Sanders or Sickinger were agents or employees of Skelly, precluding recovery on that basis.

Moreover, even if plaintiffs had alleged that Sanders and Sickinger were Skelly's agents or employees, the trial court correctly ruled the motion for summary judgment. The test under those circumstances is whether Sickinger and Sanders were "subject to the control or right to control of the defendant in the operation of the filling station in question at the time of plaintiff's injury." *Brenner* 158 S.W.2d at 174.

The provisions of the lease agreement between Skelly and Sickinger are relevant to the determination of control, as well as any other facts and circumstances which bear on this issue. A third party can dispute the status a lease apparently creates and establish that as a matter of fact the status between the parties is otherwise than what the lease states. 158 S.W.2d at 175.

Here, the lease expressly provided that the lessor, Skelly, had no right to exercise any control over the business [1] and required Sickinger to display a sign he was operating the premises under a lease.[2]

The lease also provided that the lessee be open for business at least 14 hours each day; receive a rental based upon the gallons of gasoline sold on the premises; required the display of certain advertising material, including a 60 foot high sign paid for by Skelly; required an indemnity agreement with the lessee for any and all claims for any losses, damages or injuries caused by lessee's conduct of business or use and occupancy of the premises; retained the option to pay license, permit, inspection fees and utilities upon the lessee's failure to do so; and reserved the right to inspect the premises.

In *Beckham v. Exxon Corp.*, 539 S.W.2d 217 (Tex.Civ.1976), the Texas appeals court was confronted with a lease containing similar provisions to the one here. It ruled the lease agreement did not give the lessor "the right to control the details involved in operating the service station" and held the trial court did not err in granting summary judgment for the lessor. *Id.* at 220.

We find nothing in the lease provisions here which establish that Skelly controlled or had the right to control the operation of the service station. Nor do we find any other facts which establish control by Skelly.

In *Brenner*, 158 S.W.2d 171, the court found that although the lease provisions between the oil company and the lessee standing alone might indicate that the lessee was not subject to the oil company's control or right of control, there were facts from which a jury could find that the oil company's sales representative assumed the right to control the details of the operation of the service station. These facts included frequent visits by the sales representative, detailed interrogation of the lessee of all facets of the operation, including those which under the lease, the lessor had no interest in, ordering the lessee's employees to perform certain tasks, and "just [giving] orders in general." at 174.

Plaintiffs here contend Skelly's answers to interrogatories raise an issue as to control. In those interrogatories, Skelly stated its territory sales representative made routine sales calls every 10 days to two weeks to determine Sickinger's need for petroleum products. At that time, Skelly's representative would make general examination of the premises. Skelly further acknowledged Charles Sickinger stated to its representative in the spring of 1975 that vandalism to the premises was occurring during the night and early morning hours. Skelly's territory representative suggested that a security guard be hired. These facts are insufficient, in light of *Brenner*, to alter the status of the parties as set forth in the lease and therefore to raise a genuine issue as to control of the station.[3]

 Here, neither the lease, the pleadings, affidavits or any other facts establish

---

1. None of the provisions of this lease shall be construed as reserving to Lessor any right to exercise any control over the business or operations of Lessee conducted upon said premises or to direct in any manner the method whereby any such business or operations shall be conducted. Lessor shall have no control or direction over the employment or conduct of employees of Lessee, and in no event shall any person or persons employed by Lessee be considered an employee of Lessor.

2. Lessee agrees to display upon said premises during the term and continuance thereof a sign or signs to be furnished by Lessor showing that Lessee is occupying and operating said premises under a lease. Lessee will not erect, maintain or permit any sign, insignia, or other ad-

vertising device upon or near the premises herein described which would indicate that Lessor is the owner or operator of the business conducted upon the premises herein described.

3. Plaintiffs have been unable to obtain service on either Charles Sickinger or Jerry Sanders, as their whereabouts are unknown. In the court below, plaintiffs stated that without discovery from Sickinger and Sanders they were handicapped in their ability to present facts establishing control. We acknowledge the impediment this created. Nevertheless, when a motion for summary judgment is filed a party must come forward with "specific facts" which demonstrate a genuine issue of material fact.

that Skelly controlled or had the right to control the operation of the service station. There is no genuine issue of material fact on this point. Skelly has established that it is entitled to judgment as a matter of law.

Affirmed.

SNYDER and CRIST, JJ., concur.