Raymond M. HORSTMAN, Plaintiff-Appellant-Respondent,

v.

Meyer S. GLATT and Bertha S. Glatt, Defendants-Respondents-Appellants.

No. 53216.

Supreme Court of Missouri, Division No. 1.

Jan. 13, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 10, 1969.

**640**

Edgar S. Carroll, Thos. J. Conway, E. E. Empie, Jr., Kansas City, for plaintiff-appellant-respondent, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

Lowell Knipmeyer, Lawrence Brown, Kansas City, for defendants-respondents-appellants, Knipmeyer, McCann & Millett, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, of counsel.

WELBORN, Commissioner.

Raymond M. Horstman was injured on July 31, 1964, when the marquee, upon which he was standing and which covered the entrance to the Hotel New Yorker on Baltimore Avenue in Kansas City, fell to the ground. Horstman sued Meyer S. Glatt and Bertha Glatt as owners of the premises and Pusateri's Hotel New Yorker, Inc., and Oliver Goodman as operating tenants. A jury in the Jackson County Circuit Court returned a verdict in favor of the plaintiff and against the above-named defendants for $350,000. A remittitur of $50,000 was ordered and judgment for $300,000 entered against the hotel corporation and Goodman. However, the Glatts' motion for judgment in accordance with their trial motions for a directed verdict was sustained. The trial court also ordered that, in the event that such action was set aside on appeal, the Glatts' motion for new trial should be considered overruled. The hotel corporation and Goodman appealed from the judgment against them, but later dismissed their appeal. Horstman appealed from the judg-

ment in favor of the Glatts. The Glatts also filed notice of appeal to review the trial court's action in overruling their motion for new trial, in the event that Horstman prevailed on his appeal.

The marquee in front of the Hotel New Yorker extended across the width of the hotel building. It extended outward from the building approximately the width of the sidewalk and was some fourteen feet above the walk. The marquee was built into the building. At its outer edge, it was suspended by three chains running from the marquee to the building. The marquee was of steel and wood construction and weighed 9,000 pounds.

The Glatts acquired the hotel property in 1927. The marquee was on the structure at that time. They operated the hotel under the name "Bray Hotel" until 1947, when they leased the premises to Gus and James Pusateri. On November 1, 1948, a new lease was entered into between the same parties for a term of 10 years, from October 1, 1948 to September 30, 1958, with an option to renew for another 10-year term. This renewal option was exercised. On December 31, 1962, the Pusateris, with the consent of the Glatts, assigned the lease for the remainder of the term to Pusateri's Hotel New Yorker, Inc., a Missouri corporation. The corporation thereafter operated the hotel. The lease imposed the duty upon the lessee to make repairs.

The hotel corporation had a contract with Stalcup, Inc., to maintain and repair the electric sign on the front of the hotel. The main body of the sign was 10 to 15 feet above the marquee, and a channel of two rows of flashing lights ran from the marquee to the sign. At around 10:00 A.M. on July 31, 1964, Horstman, an employee of Stalcup, Inc., and another Stalcup employee went to the hotel to install a protective box over a flasher inside the sign. They placed a ladder against the marquee, with the base of the ladder in the street, and both climbed the ladder onto the marquee. Another ladder was placed on the

marquee to provide access to the flasher on the sign. An additional length of ladder was needed to reach the flasher and Horstman and his co-worker started to pull up the ladder from the street. As they did so, the marquee suddenly gave way and the front end fell into the street. Horstman was severely injured when he was thrown into the street.

On this appeal, Horstman advances four separate theories for the Glatts' liability. We consider the first three, in part, together:

(1) "Concealed Dangerous Conditions Known to Lessor."

This is the long-established exception to the general rule that an owner of premises who leases them is not liable to the tenant and persons on the premises at the instance of the tenant for injuries caused by defects in the leased premises. Warner v. Fry, 360 Mo. 496, 228 S.W.2d 729, 2 Restatement of Torts (2d) §§ 355, 356, pp. 239–241. The exception which appellant would apply here was recently stated and applied by this court in Reckert v. Roco Petroleum Corporation, Mo.Sup., 411 S.W.2d 199, 205, as follows:

" * * * [W]here at the time the lease is executed there is a dangerous condition of the premises involving unreasonable risk of physical harm to persons on the premises, which is known to the landlord and not known to the tenant and not discoverable by the tenant in the exercise of ordinary care * * * [t]here is a duty on the landlord to disclose to the tenant the existence of the dangerous condition and he is liable to the tenant or the tenant's invitees for injuries or death resulting from such condition if the landlord fails to disclose them to the tenant or conceals their presence from the tenant. * * * "

See Prosser on Torts, 3rd Ed., § 63, pp. 413–414, 2 Restatement of Torts (2d) § 358, pp. 243–245.

(2) "Conditions Dangerous to Those Outside of the Premises."

Horstman would impose liability upon the Glatts under the exception which Prosser states as follows (op. cit., § 63, p. 414):

"A second exception is that, as in the case of a vendor, the responsibility to which the lessor would have been subject as occupier continues for at least a considerable time when he transfers possession of land in such condition that it involves an unreasonable risk of harm to others outside of it."

This exception has been recognized in the cases of Walsh v. Southwestern Bell Telephone Co., 331 Mo. 118, 52 S.W.2d 839, and Kelly v. Laclede Real Estate & Investment Co., 348 Mo. 407, 155 S.W.2d 90, 138 A.L.R. 1065. Both of those cases involved the liability of the owner for injuries to persons on the public sidewalk.

(3) "Premises Leased for Admission of the Public."

Again, Horstman calls upon an exception stated by Prosser, the exception which "arises where the land is leased for a purpose which involves the admission of the public." Prosser, op. cit., § 63, p. 415. Appellant acknowledges that Missouri cases recognizing this exception have limited it to places leased for the purpose of admitting the public in large numbers, for example, a wrestling match. Brown v. Reorganization Inv. Co., 350 Mo. 407, 166 S.W.2d 476. See Warner v. Fry, 360 Mo. 496, 228 S.W.2d 729, 731 [4, 5]. He cites Prosser's criticism of such limitation and asserts that the exception should be extended to a "public use" such as a hotel involves.

■ Inasmuch as the owner's liability under each of these exceptions is for injuries from dangerous conditions existing when the lessee took possession (2 Restatement of Torts (2d) § 356, p. 240), the fixing of that time is here important. Appellant takes January 1, 1963, the date that the assignment of the lease to the corporate tenant became effective, as the determinative date and argues that the conditions which caused the marquee to fall must have existed on that date. The respondents, on the other hand, argue that they had been out of possession of the property since November, 1947, and, in any event, the beginning of the 1948 lease to the Pusateris is the date as of which their liability must be determined. Inasmuch as the terms of the 1947 letting were not shown, we reject the beginning of that term as the decisive date.

■ We agree with the rule set forth in Keegan v. G. Heilman Brewing Co., 129 Minn. 496, 152 N.W. 877, 878 [5], L.R.A. 1916F 1149, as follows:

"* * * [I]n no sense is an assignment of a lease and assent thereto to be regarded as a new leasing. * * * The rights of the parties, so far as concerns liability for dangerous condition of the premises, are determined as of the time of the original leasing, and not as of the time of the assignment." See Michigan Millers Mutual Fire Ins. Co., et al. v. Canadian Northern Ry. Co., (8th Cir., 1945), 152 F.2d 292, 296 [11–13].

This is the rule which reason calls for. Inasmuch as the period of the leasehold is not interrupted by the assignment, the landlord's liability should not begin anew as of the date of the assignment.

■ We conclude that liability under the exceptions here urged must be determined as of the date of the 1948 lease to the Pusateris.

■ There is no evidence which would warrant a finding that the marquee was in a dangerous condition at that time. The case was submitted under the res ipsa doctrine and appellant does not endeavor to state specifically just what the conditions were which caused the marquee to fall. Pictorial evidence showed some deterioration of the steel beams inside the marquee in the vicinity of the points of attachment

of the chain to the marquee. There was no evidence of the duration of such condition. Mere examination of the pictorial evidence did not afford an adequate basis for placing the inception of such condition at a time which would give rise to liability on the part of the lessors.

■ Furthermore, liability of the lessors under the first two exceptions relied upon continues only until the lessee has had reasonable opportunity to discover the condition and to take precautions to remedy it, there being no contention of active concealment of a condition known to the owner. 2 Restatement of Torts (2d) § 358(2), pp. 243–244; Prosser, op. cit., § 62, p. 410. Assuming that there might have been a dangerous condition with respect to the marquee as of October 1, 1948, the intervening time would have afforded the lessee more than adequate opportunity to have discovered it. Therefore, liability under the first and second exceptions here urged may not be imposed upon the owner.

■ Further, with respect to the second exception here urged, there is considerable question of the validity of the assumption that Horstman should be considered in the same situation as if he had been on the sidewalk. Actually, the exception relied upon is directed not particularly at the type of hazard as much as it is intended to afford protection to persons on public ways. Walsh v. Southwestern Bell Telephone Co., supra, 52 S.W.2d 843 [6]. Horstman was not *on* a public way when the marquee fell. He may have been *over* a public way, but he was on the marquee not in the exercise of a right granted the public generally but at the express invitation of the lessee. But for such invitation, he would have had no right to have been upon the marquee.

The fact that the tenants and the owners subsequently sought permission of the City of Kansas City to erect a new marquee to replace the fallen one does not evidence that Horstman was on a public way at the time of the fall. Municipal regulation of such structures is common, but such regulation does not cause such structure to acquire the incident of a public way.

■ Again, with respect to the third exception, as Prosser points out, "The lessor's liability extends only * * * to those invitees who enter for the purpose for which the place was leased." Op. cit., § 63, p. 418. The Restatement expresses this limitation as follows: "[The lessor] is not subject to liability to invitees of the lessee who come upon the premises for a business purpose other than that for which they are open to the public, as in the case of a truck driver delivering provisions to a restaurant." Restatement of Torts (2d) § 359, Comment e, p. 247. Such rule eliminates Horstman from the protection of the third exception relied upon.

(4) "Reservation of Control."

Horstman finally contends that the Glatts retained such control over the premises as imposed upon them a duty to him to exercise ordinary care to maintain the marquee in a reasonably safe condition for his use. For the purpose of this argument, we set out what appellant's brief summarizes as the "things * * * which we believe collectively tend to show a reservation of control by the landlords at the time the marquee fell, * * *: Landlords restricted the use of the premises for a sole specific purpose, the operation of a high class transient hotel; the Tenants were required to keep the demised premises open for business and at all times to maintain upon the demised premises a substantial stock and a reasonable number of employees for the purpose of conducting the business of the Hotel; the tenants were prohibited from making any alterations, additions, changes or improvements to the interior or exterior of the premises without the written consent of the landlords; the right to make any repairs which the tenants failed to make with reasonable promptness after notice from the landlords, could, at the landlords' option, be made and the cost thereof

and expenses incurred to become immediately due and payable by tenants to landlords; tenants could not, without the written consent of the landlords, assign the lease or any right thereunder; tenants were prohibited from allowing or permitting the playing or operation of any musical instrument, radio or noise making instrument so as to be heard outside the premises; no signs, billboards or advertisements could be placed or maintained upon any part of the premises or exterior walls except letting [sic] of color, size and design approved by landlords; no awnings could be installed without the landlords' written consent; any overhead sign or signs extending over the sidewalk were prohibited; the landlords reserved the right at reasonable hours to enter upon the leased premises for the purpose of inspecting the same or for any other purpose pertaining to the landlords' rights under the lease (which would include repairs to the premises if the landlords elected to repair); in the event of destruction of the building by any cause, landlords reserved the right of election either to terminate the lease or to repair or restore the building.

"The landlords joined as property owners in a request to the Commissioner of Buildings and Inspections of Kansas City, Missouri, to install and maintain a marquee to replace the one in question, stating the marquee was needed '* * * to protect our clientele from the elements both for the hotel and restaurant.' "

■▬▬ In our opinion, these things are inadequate to give rise to any duty on the part of the Glatts to Horstman on the theory of reservation of control by the Glatts over the leased property. In the case of Spear v. Heine Meine, Inc., Mo.Sup., 343 S.W.2d 1, 8–9 [3–5], this court pointed out that the instances of control relied upon in a case such as this must have some relationship to the situation which produced the injury. The matters bearing upon the restriction on the lessee's operation of the hotel have no relation whatever to the

condition of the marquee. At the most, they are designed to afford to the lessor the protection of his interest upon the termination of the lease. The lessor is accorded the right to make repairs at the lessee's expense, in the event that the lessee fails to undertake such repairs after reasonable notice. The lessor is also given the right to inspect the premises at reasonable times for purposes pertaining to the landlord's right. However, that is not such a reservation of a right of control as shows "a sharing of control as between landlord and tenant." Lemm v. Gould, Mo.Sup., 425 S.W.2d 190, 195. Certainly, a provision of a lease which authorizes, but does not require, repairs by the lessor, should not be given an effect beyond that accorded an express duty on the part of the lessor to repair. Missouri does not recognize such an express obligation as one that gives rise to a duty on the part of the lessor to a person in the position of plaintiff here. Lahtinen v. Continental Bldg. Co., 339 Mo. 438, 97 S.W.2d 102, 106 [3].

The control issue in this case is far different from that presented in Lemm v. Gould, supra, and Minton v. Hardinger, Mo., 438 S.W.2d 3 (decided December 9, 1968), involving short-term letting of furnished residential property. Here, the evidence of significance on the issue of control is primarily found in the terms of the written lease. We find that the lease contemplated a long-term letting, with a minimum of control reserved to the lessor, and not such control as would afford a basis of liability in this case.

We also take into consideration that the owners joined in the request for city approval of the new marquee. The nature of the municipal regulation requiring such application does not appear. However, that an owner should be required to join in such an application is certainly not unreasonable and, absent some reliance upon a statutory duty to maintain, would have no bearing on the issue here.

Appellant urges that this case is similar to that of Weber v. Schlemmer, 6th Cir., 365 F.2d 323. There the court found that the owner might be held liable to a workman who was injured when an outside stairway to an apartment of a tenant collapsed. The workman was installing a linoleum in the kitchen of the rented apartment. The owner bought the linoleum and actively participated in the laying of the linoleum. She was present when it was laid, inspected the work and made suggestions pertaining to the installation. The court held that the circumstances warranted a finding that the installer was an invitee of the owner, since the linoleum might have been found to be a fixture. 365 F.2d 325 [2]. The court also considered the issue of control. The court stated that, under Ohio law, a landlord who reserved the right to direct and supervise alterations made by the tenant, might be liable to an invitee of the tenant "when he has knowledge of the alterations," and concluded that the activities of the owner could afford a basis for a finding that she was exercising partial control over the premises. 365 F.2d 326 [4]. There is, of course, no evidence of any activity on the part of the owner here which is in any manner comparable to the activity of the owner in the case relied upon.

We, therefore, conclude that the trial court properly sustained the motions of the Glatts for judgment. In view of that result, the appeal of the Glatts becomes moot and is dismissed. The costs on this appeal are to be taxed equally between the plaintiff-appellant and the defendants-appellants, the Glatts.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.