**William D. HORNBECK, Appellant,**

v.

**ALL AMERICAN INDOOR SPORTS, INC., et al., Respondents.**

**No. WD 49855.**

Missouri Court of Appeals, Western District.

May 30, 1995.

by the inadmissible portion of Ms. Brooks' testimony.

Stephen Robert Miller, Kansas City, for appellant.

David Roy Buchanan, John S. Rollins, Kansas City, for respondents.

Before FENNER, C.J., and BRECKENRIDGE, P.J., and HANNA, J.

FENNER, Chief Judge.

Appellant, William Hornbeck, ruptured an achilles tendon while taking part in an indoor soccer game at the premises owned by respondents Ron Matsch and James R. Jorgenson, the Bannister Company, L.P. ("Bannister"), and operated by All American Indoor Sports, Inc. ("All American"). Mr. Hornbeck alleges that there was a rip or tear in the artificial surface of the playing field at the All American facility that caused his injury.

In his petition, Mr. Hornbeck alleged that respondents breached the duty of reasonable care to maintain the indoor soccer arena in a reasonably safe condition by failing to repair the defective surface, by permitting him to play on the defective surface, by failing to warn him of the danger, and by failing to restrict access to the dangerous area. Mr. Hornbeck sought recovery of medical expenses, lost wages, and damages for losses to his sole proprietorship, impairment of his earning capacity, and future medical expenses and lost income. Appellant Mary Quinn Hornbeck claimed damages for lost wages while caring for William Hornbeck after his injury.

After deposing Mr. Hornbeck, respondents filed motions for summary judgment. Respondent All American's motion for summary judgment was based on Mr. Hornbeck's signing of a team roster containing a "Player Release Clause" ("Release") that reads as follows:

In consideration of participation in and at All American Indoor Sports, Inc. (A.A.I.S.), its playing fields, leagues, clinics, camps, tournaments, locations or the renting of any of its facilities, *the undersigned person(s) hereby release A.A.I.S., its officers, employees, volunteers, officials and agents from any and all claims, liability, loss of services and causes of action*

*of any kind for personal injury and property damage arising in any way out of said participation.* Further, the undersigned person(s) agree to abide by and comply with all A.A.I.S. rules and regulations. *By signing my name below, I hereby acknowledge that I have read the above, I understand it and I agree to all of its terms.*

(Emphasis added). Mr. Hornbeck admitted to voluntarily signing the roster form containing the Release and to participating in various indoor soccer leagues for approximately 10 years prior to his injury. All American asserted that the Release, combined with the facts and circumstances presented by the case, was sufficient to release it from all claims asserted by appellants in this cause of action and, therefore, summary judgment was proper.

Respondent Bannister asserted as its basis for summary judgment that it had no duty to keep the premises safe under the lease agreement with All American. The lease was for a term of 15 years and the document itself did not impose any duty on Bannister to make repairs to maintain the premises in a reasonably safe condition, though certain other rights were retained in the lease.

The trial court granted the summary judgment motions of both respondents by Order on May 11, 1994, without announcing specific findings. A motion to reconsider was denied, and appellants appeal from the grant of the motions for summary judgment.

## I. STANDARD OF REVIEW

The Missouri Supreme Court provided an exhaustive analysis of summary judgment practice and review in its opinion in *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371 (Mo. banc 1993). Appellate review of summary judgments is essentially *de novo. Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different than those which the trial court should have employed initially. *Id.* As the trial court's initial judgment is founded on the record submitted and the law, there is no need for the appellate court to defer to the

trial court's granting of the summary judgment motion. *Id.*

When considering the appeal, the Court will review the record in the light most favorable to the party against whom judgment is sought. *State ex rel. Conway v. Villa,* 847 S.W.2d 881, 886 (Mo.App.1993). The movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted; any evidence in the record that presents a genuine issue as to the material facts defeats the movant's prima facie showing. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 382. A "genuine issue" exists where the record contains competent material that evidences two plausible, but contradictory, accounts of the essential facts. *Id.* A "genuine issue" is a dispute that is real, not merely argumentative, imaginary, or frivolous. *Id.*

The non-movant is accorded the benefit of all reasonable inferences from the record. *Martin v. City of Washington,* 848 S.W.2d 487, 489 (Mo. banc 1993). If the movant requires an inference to establish his right to judgment as a matter of law and the evidence reasonably supports an inference other than that alleged by movant, a genuine dispute exists and the movant's prima facie showing fails. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 382.

Facts set forth in support of a party's motion for summary judgment are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. Even if uncontradicted, however, the facts alleged by movant must still establish an entitlement to judgment as a matter of law for summary judgment to be proper. *See E.O. Dorsch Elec. Co. v. Plaza Const. Co.,* 413 S.W.2d 167, 173 (Mo.1967). The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 380.

## II. SHOWING REQUIRED BY ALL AMERICAN AND BANNISTER TO SUPPORT THEIR RESPECTIVE SUMMARY JUDGMENT MOTIONS

All American and Bannister were both "defending parties" in the underlying

action. A movant who is a "defending party" may establish a right to summary judgment by showing any one of the following: (1) facts that negate any one of the claimant's facts required to establish an element of claimant's claim; (2) the non-movant, after a reasonable period for discovery, has not and will not be able to produce evidence for the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pled affirmative defense. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

 Only once the movant has satisfied one of the three grounds for establishing a right to judgment is the non-movant required to set forth specific facts showing there is a genuine issue of material fact. *Id.* (*citing* Rule 74.04). Once the movant makes a prima facie showing, an adverse party may not rest upon the mere allegations or denials contained in their pleadings to contradict facts alleged by the movant. *Id.*

### III. ALL AMERICAN'S MOTION FOR SUMMARY JUDGMENT

To establish entitlement to summary judgment, All American must make a prima facie showing that it is entitled to judgment as a matter of law that is not overcome by facts alleged by the appellants that establish a genuine issue for trial.

All American relies on the properly-pled affirmative defense of release to show it is entitled to judgment as a matter of law. The release, however, must be a valid and enforceable waiver in order for summary judgment to be proper.

 There is no dispute regarding whether Mr. Hornbeck executed the Release. Further, exculpatory clauses like that contained in the Release which exonerate a party from acts of future negligence are not against public policy in Missouri and are thus binding and valid on the parties. *Haines v.*

*St. Charles Speedway, Inc.*, 689 F.Supp. 964, 967 (E.D.Mo.1988), *aff'd*, 874 F.2d 572 (8th Cir.1989) (construing Missouri law); *Weindel v. De Soto Rural Fire Protection Assoc., Inc.*, 765 S.W.2d 712, 715 (Mo.App.1989). Also, it has been held in a number of cases that an agreement between a patron and the operator of an amusement device exempting the latter from liability for ordinary negligence resulting in personal injury is valid and enforceable against the patron if the patron is properly notified thereof. *See* Annotation, *Validity, Construction, and Effect of Agreement Exempting Operator of Amusement Facility from Liability for Personal Injury or Death of Patron*, 8 A.L.R.3d 1393 (1966). The question in this matter is whether the release properly notified appellant William Hornbeck that he was releasing All American from claims arising from All American's own negligence.

 While contracts exonerating a party from acts of future negligence are not against public policy, they are strictly construed against the party claiming the benefit of the contract, and clear and explicit language in the contract is required to absolve a person from such liability. *See Thomas v. Skelly Oil Co.*, 344 S.W.2d 320, 322 (Mo.App. 1960); 17 C.J.S. *Contracts* § 262 (1963).

All American cites *Haines v. St. Charles Speedway, Inc.*, as supporting it's argument that the Release was clear and specific enough to exonerate it from liability. The release in *Haines*, however, contained language releasing claims "whether caused by the negligence of the releasees or otherwise...." 689 F.Supp. at 969. This language clearly and unambiguously encompassed the negligence of the party seeking to enforce the release. Such language is not present in the case at bar. The language of the Release signed by Hornbeck purporting to exonerate All American from "any and all claims ... arising from said participation" does not clearly and unambiguously exonerate All American from its own negligence. The language is too general to meet the standards necessary to achieve release of All American's negligence.[1]

---

**1.** The validity of release or indemnification agreements has been addressed in other contexts

■ Because the language of the Release is ambiguous as to whether or not it absolves All American from its own negligence, All American cannot make a prima facie showing that it is entitled to judgment as a matter of law based on the affirmative defense of release. Consequently, the trial court erred in granting summary judgment to All American based on the affirmative defense of release.

## IV. BANNISTER'S MOTION FOR SUMMARY JUDGMENT

Appellants allege that Bannister breached its duty to maintain the indoor soccer arena so as to prevent injuries in failing to repair the alleged tear in the artificial surface claimed to have caused Mr. Hornbeck's injury. Bannister is the landlord for the commercial property leased to All American where the accident in question took place. The lease was for a period of fifteen years and, among other things, reserved to Bannister the right, though not the duty, to enter the premises and make repairs upon All American's failure to make such repairs; required approval from Bannister before All American made any alterations, improvements, additions, or changes to the premises; allowed Bannister to retain a pass key to the premises; allowed Bannister to enter the premises with a pass key or forcibly enter the premises; allowed Bannister to enter the premises to make inspections or show the premises to prospective purchasers, lenders, tenants and other persons having a business interest therein; allowed Bannister to perform any reasonable acts related to the safety, protection, or preservation of the premises or the building; and required Bannister's approval for assignment of the lease.

■ In Missouri, a landlord is under no obligation to a tenant to repair unless there is a contract which creates a duty to repair. *Jamrozik v. M.T. Realty & Inv. Corp.*, 843 S.W.2d 394, 395 (Mo.App.1992) (*citing Nuckols v. Andrews Inv. Co.*, 364 S.W.2d 128 (Mo.App.1962)). However, where the landlord retains partial control of the leased premises for the purpose of making repairs, the landlord is then obligated to make such repairs and to keep the premises in a reasonably safe condition for the use intended. *Id.* The question regarding Bannister's motion for summary judgment is whether there is a genuine issue as to whether Bannister retained sufficient control of the premises leased to All American to acquire a duty to make repairs to keep the premises in a reasonably safe condition.

### A. Bannister's Prima Facie Showing

A defending party such as Bannister can establish entitlement to summary judgment on the basis that the non-moving party did not and will not, after a reasonable period of discovery, produce evidence sufficient to allow the trier of fact to find the existence of one of the elements of the non-movant's

by Missouri Courts and these cases also require more than general language similar to that in All American's release. Appellants cite the following cases involving the construction of indemnification agreements: *Parks v. Union Carbide Corp.*, 602 S.W.2d 188 (Mo. banc 1980); *Asher v. Broadway–Valentine Center, Inc.*, 691 S.W.2d 478 (Mo.App.1985); and *Commerce Trust Co. v. Katz Drug Co.*, 552 S.W.2d 323 (Mo.App.1977). In each case, the party seeking to rely on an indemnification clause was an indemnitee seeking to recover from the indemnitor for the indemnitee's own negligence. This is not the general purpose of an indemnification contract, where an indemnitee is generally seeking recovery from the indemnitor for damages it has paid as the result of the indemnitor's negligence. When an indemnitee seeks such atypical recovery for its own negligence, the court requires specific language allowing the claim.

Appellants also cite *Industrial Risk Insurers v. International Design & Mfg., Inc.*, 884 S.W.2d

432 (Mo.App.1994), in support of their position. This case involved a suit by the insurer of a tenant whose property was damaged due to the negligence of the landlord. The insurer sought indemnification from the landlord for monies paid tenant under the insurance policy. The landlord sought exoneration from liability pursuant to a clause in the lease stating that the landlord "assumes no responsibility for the contents stored in the building or on the premises." The court cited the cases involving contracts of indemnity in holding that the clause was not sufficiently clear and unambiguous to absolve the landlord from liability.

While the factual scenarios in these cases differ from the case at bar, they do stand for the general proposition that in order for a release or indemnification to exonerate a party from future acts of their own negligence, it must clearly and unambiguously do so. General language will not suffice.

claim. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 371. Bannister asserts that they had no obligation or duty to make repairs to the premises to maintain it in a reasonably safe condition pursuant to the lease agreement with All American. Therefore, Bannister claims it is entitled to judgment as a matter of law because appellants cannot establish the duty element necessary to maintain their claim.

Bannister cites *Horstman v. Glatt*, 436 S.W.2d 639 (Mo.1969), as support for its position that it is entitled to judgment as a matter of law. In *Horstman*, the owner of a building leased the premises to a tenant who operated a hotel in the building subject to the lease agreement. Many of the exact rights reserved to Bannister in its lease with All American were reserved to the owner of the building in *Horstman*, including the right to enter the premises to make repairs should the tenant fail to do so. The plaintiff in *Horstman* was injured when the marquee he was standing on collapsed while he was attempting to repair part of the electric sign above the marquee on the front of the hotel.

The *Horstman* court determined that the owners of the building did not retain sufficient control to give rise to a duty to make repairs to maintain the premises in a reasonably safe condition. 436 S.W.2d at 644. Relying on *Spear v. Heine Meine, Inc.*, 343 S.W.2d 1, 8–9 (Mo.1961), the court stated that the instances of control relied upon must have some relationship to the situation which produced the injury. *Horstman*, 436 S.W.2d at 644. The court found that the restrictions on the tenant's operation of the hotel were designed to protect the landlord's interest upon termination of the lease and were in no way related to the condition of the marquee. *Id.* The court also distinguished the situation presented by the commercial lease in *Horstman* from those presented by short-term leases for furnished residential property like that addressed in *Lemm v. Gould*, 425 S.W.2d 190 (Mo.1968).

▇▇▇ Based on the lease between Bannister and All American, this court can find no relationship between the rights retained by Bannister to protect its interest in the leased property and the maintenance of the artificial surface playing field. Therefore, Bannister has sustained its prima facie burden of showing entitlement to judgment as a matter of law.

**B. Appellants' Response to Bannister's Prima Facie Showing**

Appellants cite *Lemm* for the proposition that a landlord is under a duty to exercise ordinary care to keep that portion of the premises over which he retains partial control in a reasonably safe condition for the use intended and is liable for damages for personal injuries resulting from his failure to perform that duty. 425 S.W.2d at 194. However, appellants fail to realize the issue presented by this case is whether Bannister retained sufficient control to establish such a duty. Further, *Lemm*, a case involving a residential lease, is distinguishable on its facts from *Horstman* and the case at bar which involve commercial leases.

Appellants have failed to provide evidence contradicting the facts alleged by Bannister in establishing its entitlement to judgment as a matter of law. No evidence has been provided to show a relationship between the rights of control retained by Bannister and the maintenance of the artificial playing surface.

Appellants assert that Bannister was required to set forth evidence regarding the degree of actual control Bannister retained over the property in order to make a prima facie showing of entitlement to summary judgment. This assertion is misplaced. The court in *Horstman* relied solely on the lease agreement in making its finding that sufficient control was not retained to establish a duty to make repairs to maintain the premises in a reasonably safe condition. 436 S.W.2d at 644. The terms in the lease in question are similar to those in *Horstman* and sufficient to make a similar finding that no duty attached to Bannister in this case. Once the prima facie showing was made by Bannister, appellants had the burden to come forth with contradictory evidence and they have failed to do so. There is a complete absence of evidence showing a relationship between the rights retained by Bannister and

the maintenance of the artificial playing surface.

 Appellants also assert that an adequate period for discovery had not lapsed so as to allow proper entry of summary judgment. This argument is not persuasive. The motions for summary judgment were filed more than one year after the filing of the initial petition in this matter. Still, appellants assert that written discovery had just begun when the motions were filed. Appellants were granted three extensions to file responses to respondents' summary judgment motions, yet filed their response out of time. Clearly, there was more than sufficient time for appellants to conduct adequate discovery in this case.

There is no genuine dispute as to whether appellants can establish the existence of a duty on behalf of Bannister to make repairs to maintain the premises in a reasonably safe condition. Appellants have not and can not establish such a duty. Therefore, the order of the trial court granting Bannister's motion for summary judgment was proper.

The order of the trial court granting the summary judgment motion of All American is reversed and the cause is remanded to the trial court for further proceedings with respect to All American. The order of the trial court granting summary judgment to Bannister is affirmed.

All concur.