**Danielle McKINNEY, Respondent,**

v.

**H.M.K.G. & C., INC. d/b/a Club OX d/b/a XO Club, Defendant,**

**David Porter d/b/a Fanny's Building Co., Appellant.**

**No. WD 62222.**

Missouri Court of Appeals, Western District.

Nov. 4, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2003.

Application for Transfer Denied Jan. 27, 2004.

---

Michael A. Childs, Kansas City, MO, for appellant.

Patrick F. Bottaro, Kansas City, MO, for respondent.

Jeffrey S. Eastman, Gladstone, MO, for defendant.

Before PAUL M. SPINDEN, P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

## I. Factual and Procedural Background

This case involves a question of premises liability. At issue is a landlord's duty to a tenant's business invitee for injuries sustained on the leased premises. After respondent Danielle McKinney fell over a ledge inside of the XO Club in Kansas City, she brought an action against the club's owner and against the appellant, who owns the building in which the club is located. Ms. McKinney asserted claims against these defendants for common law negligence, negligence per se, and punitive damages. The negligence per se claim was based upon the failure to comply with a provision of the Kansas City building code that governs the height of guardrails. While the code specifies a guardrail at least 42 inches high, the guardrail in this case was less than 30 inches high.

At the close of Ms. McKinney's evidence and at the close of all the evidence, the trial court denied appellant's motions for directed verdict on the common law negligence and negligence per se claims. The trial court granted defense motions for a directed verdict on the punitive damages claim, however. Ms. McKinney ultimately chose to submit only the negligence per se claim to the jury, which returned a verdict in her favor against both defendants. Appellant thereafter filed a motion for judgment notwithstanding the verdict. The trial court denied the motion.

Appellant raises one point on appeal. He contends that the trial court erred in denying his motions for directed verdict and his motion for judgment notwithstanding the verdict because a landlord is not liable to a tenant's business invitees for injuries caused by defects on the premises unless the landlord exercises control over the premises. Appellant contends that he did not exercise sufficient control over the premises as a matter of law to fall within the exception to the general rule against liability. We agree and reverse the judgment of the trial court.

## II. Standard of Review

■ When we review the trial court's rulings on a motion for directed verdict and a motion for judgment notwithstanding the verdict, the question before us is whether the plaintiff made a submissible case. *See Hogate v. Am. Golf Corp.*, 97 S.W.3d 44, 46 (Mo.App. E.D.2002); *Newcomb v. St. Louis Office for Mental Retardation & Developmental Disabilities Res.*, 871 S.W.2d 71, 73 (Mo.App. E.D.1994).

■ To make a submissible case, the plaintiff "must present substantial evidence of every fact necessary to establish the liability of the defendant; and it is a judicial function to determine whether negligence can be inferred from the facts and whether the plaintiff's evidence establishes a submissible case." *Newcomb*, 871 S.W.2d at 73. "The existence of a duty is a matter of law and is thus a question for the court." *Id.*

■ In determining whether the plaintiff made a submissible case, "[w]e view

the evidence in the light most favorable to the verdict and we presume that plaintiff's evidence is true and disregard any of defendant's evidence which does not support the verdict." *Hogate*, 97 S.W.3d at 46.

### III. LEGAL ANALYSIS

■ The violation of an ordinance is negligence per se where there is in fact a violation of the ordinance; the person injured is within the class of persons intended to be protected by the ordinance; the injury is of the type that the ordinance was designed to prevent; and the violation of the ordinance is the proximate cause of the injury. *Mediq PRN Life Support Servs., Inc. v. Abrams*, 899 S.W.2d 101, 107 (Mo. App. E.D.1994). It is acknowledged by Ms. McKinney that she is required to prove possession and control by the landlord even in a negligence per se case.

■■ In order for negligence per se to be based upon an ordinance, the ordinance must be consistent with the common law. *Burns v. Frontier II Properties Ltd. P'Ship*, 106 S.W.3d 1, 4 n. 2 (Mo.App. E.D.2003) (citing *Abrams*, 899 S.W.2d at 110). While the General Assembly has authority to enact statutes that override the common law, "local governments have no such authority to enact ordinances that override the common law." *Abrams*, 899 S.W.2d at 110.

■ At common law, a landlord generally is not liable to a tenant's business invitees for injuries caused by defects on the premises. *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 763 (Mo. banc 1996). This general rule rests upon the notion that a lease is tantamount to the sale of the demised premises during the term of the lease. *See, e.g., Warner v. Fry*, 360 Mo. 496, 228 S.W.2d 729, 730 (1950). An exception to the general rule arises where the landlord retains control over the leased premises for the purpose of making repairs. *Caples v. Earthgrains Co.*, 43 S.W.3d 444, 451 (Mo.App. E.D.2001).[1] Whether a landlord exercises sufficient control to fall within this exception "turns largely on the extent to which the landowner permits the tenant to treat the premises as belonging to the tenant." *Richeson*, 931 S.W.2d at 509. As the Missouri Supreme Court explained in *Lemm v. Gould*:

> The possession or control, which must be shown in order to make a landlord liable under this rule, is not to be found merely in the obligation of the landlord to make repairs or the right to enter the premises. There must be something more—some additional fact or facts from which a jury could infer that under the agreement the tenant gave up and surrendered his right to exclusive possession and control and yielded to the landlord some degree or measure of control and dominion over the premises; some substantial evidence of a sharing of control as between landlord and tenant. In order to be bound to keep the premises in a reasonably safe condition the landlord need not have reserved such a degree of control as to be entitled to admit or exclude others from the premises. It is sufficient that he retained a general supervision over the premises for a limited purpose such as the making of repairs or alterations, and

1. Exceptions also arise where "(1) the landlord has knowledge of a dangerous condition not discoverable by the tenant and fails to disclose that condition, (2) the injury occurs in a common area, or (3) the landlord is responsible for making repairs and negligent-ly fails to do so." *Richeson v. Sprinco, Inc.*, 931 S.W.2d 507, 508–09 (Mo.App. W.D.1996). We need not consider these exceptions here because both parties agree that they do not apply to this case.

the right to enter the premises and make repairs upon his own initiative and responsibility.

425 S.W.2d 190, 195 (Mo.1968).

In light of the general common law rule exempting a landlord from liability, this court's eastern district has twice concluded that a landlord's violation of municipal building codes does not constitute negligence per se. In *Abrams*, a commercial tenant sued its landlord, among others, after an electrical fire on the premises damaged the tenant's property. 899 S.W.2d at 103–04. The tenant argued that the landlord had violated provisions of the St. Louis County electrical code,[2] and that the violation constituted negligence per se. *Id.* at 104, 109.

The court rejected this argument, concluding that the tenant's interpretation of the ordinance was inconsistent with the common law. *Id.* at 110. At common law, "a landlord is not an insurer of the leased premises, nor is a landlord strictly liable for a latent defect absent actual or constructive knowledge of the defect." *Id.* at 109. A finding of negligence per se, therefore, was inconsistent with the common law because it allowed a jury to find the landlord liable absent such knowledge of the defect. As the court explained:

> [The tenant's] interpretation of the maintenance provisions conflicts with the common law principles governing a landlord's duty to repair latent defects. The duty enunciated in the maintenance

provisions in the Code must be commensurate with Missouri's common law. Therefore, all St. Louis County building owners and their designated agents have a duty to make reasonably safe all electrical systems in their buildings, but they may only be held absolutely liable for latent defects if they have actual or constructive knowledge of any such defects.

*Id.* at 110.

Because there was no evidence that the landlord had such knowledge, the court held that the tenant failed to make a submissible case of negligence per se against the landlord. *Id.* at 111. *But see Monsour v. Excelsior Tobacco Co.*, 115 S.W.2d 219, 222–23 (Mo.App.1938) (recognizing that common law would require actual or constructive knowledge of defect, but concluding that the ordinary tests of negligence did not apply where local ordinance imposed absolute duty on apartment owner to provide and keep a light in the common halls and stairways of apartment and that violation of ordinance was negligence per se, even absent showing that landlord had knowledge of defect in time to remedy it).

In *Thomas v. Barnes*, 634 S.W.2d 554 (Mo.App. E.D.1982), a fluorescent light tube fell from a fixture inside a store and struck a girl in the face. Subsequent investigation revealed that the fixture violated a provision of the building code in the city of St. Louis.[3] *Id.* at 555. Although

---

**2.** The portion of the code at issue provided that " '[a]ll electrical systems, both existing and new, shall be maintained in a safe condition' and that '[t]he owner or a designated agent shall be responsible for the safe maintenance of the electrical systems in any building, structure or premise at all times.' " *Abrams*, 899 S.W.2d at 109. (citation omitted).

**3.** The code provided that " '[a]ll buildings and structures and all parts thereof, both existing

and new, shall be maintained in a safe and sanitary condition. All service equipment, means of egress, devices and safeguards which are required by this code in a building or structure, or which were required by a previous statute in a building or structure, when erected, altered or repaired, shall be maintained in good working order.' " The code further provided that " '[t]he owner or his designated agent shall be responsible for the safe and sanitary maintenance of the

the girl's next friend acknowledged that she would have no cause of action against the landlord at common law, she argued that the landlord's violation of the building code constituted negligence per se. *Id.*

Quoting extensively from the Missouri Supreme Court's decision in *Corey v. Losse,* 297 S.W. 32 (Mo.1927), the eastern district concluded that an ordinance cannot impose civil liability upon the landlord for injuries to a third party when the landlord would not be liable at common law. *Id.* at 555–56. The court quoted *Corey* for the proposition that " '[t]he city of St. Louis may adopt ordinances, but they must be in harmony with, and subject to, the Constitution and laws of the state.' " *Id.* at 555 (quoting *Corey,* 297 S.W. at 32).[4]

At first blush, *Abrams* and *Thomas* seem to be at odds with this court's decision in *Derboven v. Stockton,* 490 S.W.2d 301 (Mo.App.1972). In *Derboven,* the family of a man who was burned to death in a tavern fire brought a wrongful death action against the tavern, contending that the tavern owner was liable for negligence per se because the tavern did not have outward-opening doors, as required by both state statute and local ordinance. *Id.* at 305–307.

This court held that the owner's violation of the state statute was negligence per se, even though the owner would not be liable at common law. *Id.* at 314. Analyzing the statute but not the ordinance, the court said:

Based again on the plain purpose of the statutes—the protection of human life—and the remedial nature of the legislation, the statute should be construed broadly to effect its purpose and prevent the mischief apprehended. To relegate the members of the public to their remedy against the person in 'control' under the narrow definitions of landlord and tenant would permit evasion of the salutary purpose, by leases to persons with no financial responsibility, and cause a subversion of the plain purpose of the statute. It would, likewise, result in the anomaly of permitting recoveries where premises were owner occupied and deny recovery where lessees were in possession regardless of the financial responsibility of either.

*Id.*

The court did not address the ordinance violation, however, evidently because the appellants did not raise that issue. *See Id.* at 312 ("Defendants Stockton confine their complaint to the first alternative submission [relating to the statutory violation]."). As *Thomas* therefore notes, *Derboven* is distinguishable because the *Derboven* court did not have an opportunity to consider whether the ordinance violation would be negligence per se. 634 S.W.2d at 556 ("*Derboven* recognized that the legislature has the authority to enact statutes that override the common law of the state, but did not address the issue of whether a city has the power to do so by ordi-

building or structure and its exitway facilities at all times.' " *Thomas,* 634 S.W.2d 554, n. 1.

4. *Corey,* in turn, involved a tenant's child who fell through a broken banister surrounding a porch. The ordinance at issue in that case provided that " '[i]t shall be the duty of every owner, trustee or lessee of every tenement house to provide for and maintain the same in all parts in good repair.' " 297 S.W. at 32. The Missouri Supreme Court held that this

ordinance could " 'have no influence in the decision of this question. As between the owner and the city, the obligation under such a police regulation may well rest upon the owner; and yet, as between the owner and his tenant, the rule of the common law will prevail, which casts the obligation upon the tenant.' " *Id.* at 33 (quoting *Burnes v. Fuchs,* 28 Mo.App. 279, 282, 1887 WL 1728 (1887)).

nance.").[5] *See also Wells v. Henry W. Kuhs Realty Co.,* 269 S.W.2d 761, 767 (Mo. 1954) (seeming to suggest that violation of ordinance was negligence per se, but that violation of ordinance did not create civil liability where the ordinance was penal, rather than remedial, and where it provided for no civil liability as between the defendant and third persons, but further suggesting that defendant's duty could still be analyzed by treating the action as one at common law, upon conduct made negligent by ordinance, in accord with common law).

 In this case, appellant would not be liable under the general common law rule exempting a landlord from liability for injuries to a tenant's business invitees. Therefore, violation of the ordinance by itself could not create liability in this situation. *Cf., Abrams,* 899 S.W.2d at 110. For the ordinance to be consistent with the common law, appellant can be held absolutely liable for violations of the ordinance only if appellant retained control of the premises for the purpose of making repairs, consistent with the common law exception. *Cf., Id.* Accordingly, we must analyze appellant's duty against the backdrop of the applicable common law exception.

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to Ms. McKinney, we conclude that she failed to make a submissible claim as a matter of law. The lease agreement obligates the club to maintain and repair the premises.[6] It also obligates the club to comply with all government regulations, including municipal regulations.[7]

 Despite these provisions, Ms. McKinney identifies three principal means by which appellant exercised control over

---

5. *Derboven* did, however, cite with approval two California cases, in which the courts held that owners were liable for negligence per se in violating local ordinances requiring outward-opening doors. 490 S.W.2d at 316.

6. The agreement says: "MAINTENANCE OF PREMISES. Tenant, at its own expense, will take good care of the leased property and appurtenances thereto, and keep the same in good repair, free from filth, overloading, danger of fire or any nuisance and shall keep all mechanical systems in good working order. Tenant further agrees to keep in good repair, ordinary wear and tear excepted, the roof, exterior walls, gutters, downspouts, interior walls, floors, ceilings, foundations and every other part of the building and improvements (interior and exterior, structural and non-structural) and all parking areas and improvement and landscaping thereon, Tenant shall not permit any waste on premises.

Landlord shall enforce, for the benefit of Tenant, all warranties, guarantees or covenants obtained by Landlord in connection with the construction and erection of the building and improvements."

7. The agreement says: "GOVERNMENTAL REGULATION. Tenant, at its sole expense, shall comply with all laws, orders and regulations of federal, state and municipal authorities applicable to the leased property, including, without limitation, those requiring structural changes, additions and/or improvements. Improvements or betterments to comply with new fire, safety or other codes, which require an expenditure in excess of Two Thousand and no/100 DOLLARS ($2,000.00) shall be paid by Tenant and Landlord in equal shares by said amount in excess of Two Thousand and no/100 DOLLARS ($2,000.00) in any twelve (12) month period."

It is not clear whether this provision is enforceable in Missouri. According to the Restatement, "[a] clause in the lease purporting to exonerate the landlord from liability for the violation of a duty created by statute or regulation is unenforceable." RESTATEMENT (SECOND) OF PROPERTY § 17.6 cmt. d (1977). *See also Derboven,* 490 S.W.2d at 316 (agreeing with California case, which held that ordinances prescribing safety features of buildings impose a duty of compliance on the property owner and that duty cannot be delegated to the tenant in the lease).

the premises for the purpose of making repairs. First, appellant (or his insurance company) sometimes inspected the premises and instructed the club to make repairs when defects were identified. Appellant characterized these inspections and instructions as his "right" and his "duty" under the lease agreement. By itself, the right to enter and inspect the premises does not create liability. *Richeson*, 931 S.W.2d at 509. Such a right merely protects the landlord's interest in the property upon termination of the lease. *Horstman v. Glatt*, 436 S.W.2d 639, 644 (Mo. 1969). It is not "such a reservation of a right of control as shows 'a sharing of control as between landlord and tenant.'" *Id.* (quoting *Lemm*, 425 S.W.2d at 195).

■ Likewise, the right to direct repairs does not necessarily create liability. *See Richeson*, 931 S.W.2d at 509. This is especially true here, where appellant did not have a contractual obligation to repair and did not have a key to the premises. *Cf. Lemm*, 425 S.W.2d at 195 (sufficient evidence of control existed where residential landlords agreed to repair and replace defective items, and landlords retained key to apartment to come and go and make repairs on their own initiative, without obtaining tenants' consent); *Richeson*, 931 S.W.2d at 509 ("That [the landlord] usually had a key to get in the property does not establish that [the landlord] retained control over the property. The evidence established that [the landlord] did not have a key when Richeson fell. This indicates that whatever reason [the landlord] had for retaining a key in the normal course of business, its reason for doing so had no relationship to any attempt to control or possess the premises while [the tenant] lived there.") (internal quotation marks and citation omitted).

■ Second, appellant directed the club to "make sure that the ledge got taken care of" after the accident. Ms. McKinney contends that appellant therefore exercised control by directing the subsequent remedial repair. Appellant did not actually make the repairs and the club did not consult him about the repairs beyond informing him that "it would get taken care of." Even if appellant personally had made the repairs himself, such conduct would be insufficient as a matter of law to demonstrate the requisite level of control here. *See Mitchell v. O'Hearne*, 795 S.W.2d 603, 605 (Mo.App. E.D.1990) (even if trial court should have admitted evidence that landlords repaired defective garage door after accident, such evidence would not have established that landlords retained control of the premises). "Repairs made, without a binding contractual obligation to repair, after the tenant has taken possession, do not show that the landlord has retained control for the purpose of making repairs." *Id.*

Third, Ms. McKinney contends that appellant exercised control by means of his financial relationship with the club, which included sharing in the cost to repair the club's roof; abating rent on one occasion for other repairs; sharing in the club's revenues via a provision in the lease agreement that entitled appellant to a percentage of the club's revenues; and maintaining liability insurance on the property.

■ A landlord's control "must have some relationship to the situation which produced the injury." *Horstman*, 436 S.W.2d at 644. The fact that appellant shared in the cost of roof repairs and abated the club's rent for another repair does not establish liability here because those repairs were not related to the situation which produced the injury on the ledge. Moreover, appellant did not hire the contractor for these repairs or otherwise control them.

The landlord's continuation of an insurance policy is one factor that this court has found relevant to the issue of control. *See Nuckols v. Andrews Inv. Co.,* 364 S.W.2d 128, 136 (Mo.App.1962) ("We briefly summarize some of the evidence from which the jury could have found joint control and an undertaking to make the repairs. On the issue of joint control ... The continuation by appellant of an insurance policy in which appellant designated itself as owner of the farm."). But this factor must be considered in light of the other evidence in the case. *See Milne v. Pevely Dairy Co.,* 641 S.W.2d 158, 161 (Mo.App. E.D.1982) (that landlord required tenant to carry satisfactory liability insurance to protect landlord did not establish control given absence of evidence that landlord made inspections, made prior repairs, and made arrangements for future repairs). In any event, "[t]he duties of a landlord and its tenant to third parties ... are not the same ... and, therefore, the interests and risks protected by the respective policies" would not necessarily be the same. *Hartford Accident & Indem. Co. v. W. Cas. & Sur. Co.,* 712 S.W.2d 722, 724–25 (Mo.App. E.D.1986).

Finally, Ms. McKinney cites no authority—and we have found none—for the proposition that appellant demonstrated control by receiving a percentage of the club's revenue as payment under the lease agreement.

## IV. CONCLUSION

After a review of the record on appeal and considering all of the arguments of counsel, the facts do not support an inference that the landlord retained such control over the premises to show that the tenant surrendered its exclusive right to possession and shared control with the landlord. *Lemm,* 425 S.W.2d at 195. Since the landlord did not exercise suffi-

cient control under these facts, the landlord had no duty to maintain and/or repair the premises. Hence, Ms. McKinney failed to make a submissible case against appellant, and we reverse the judgment of the trial court.

PAUL M. SPINDEN, P.J., and RONALD R. HOLLIGER, JJ., concur.